JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, peticiona-
ria *v.* AUTORIDAD DE ENERGÍA ELÉCTRICA DE PUERTO RICO,
demandada.

*Número:* JR-92-169          *Resuelto:* 1ro de abril de 1993

*Leticia Rodríguez García*, abogada de la Junta de Relaciones del Trabajo de Puerto Rico; *Francisco Gómez Maldonado*, abogado de la Autoridad de Energía Eléctrica.

La Juez Asociada Señora Naveira de Rodón emitió la opinión del Tribunal.

Hoy nos toca resolver si después de aprobada la Ley Núm. 92 de 5 de diciembre de 1991, que enmendó varias disposiciones de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, 4 L.P.R.A. sec. 1 y ss.,[1] aún procede, a tenor con lo dispuesto en el Art. 9(2)(c) de la Ley de Relaciones del Trabajo de Puerto Rico, Ley Núm. 130 de 8 de mayo de 1945, según enmendada, 29 L.P.R.A. sec. 70(2)(c), "entablar acción legal adecuada ante el *Tribunal Supremo de Puerto Rico* para que se ponga en vigor [un] laudo de arbitraje". (Énfasis suplido.)

Con el propósito de poner en vigor un laudo de arbitraje, la Junta de Relaciones del Trabajo de Puerto Rico (Junta) presentó ante este Tribunal una petición al amparo de la facultad que concede el citado Art. 9(2)(a) de la Ley de Relaciones· del Trabajo de Puerto Rico.[2] Concedimos un tér-

---

[1] La Ley de la Judicatura del Estado Libre Asociado de Puerto Rico fue enmendada nuevamente mediante la Ley Núm. 21 de 13 de julio de 1992.

[2] Los hechos que dieron lugar a la petición de la Junta de Relaciones del Trabajo de Puerto Rico (Junta) para que pongamos en vigor el laudo de arbitraje comenzaron en 1990. Para esa época, la Autoridad de Energía Eléctrica (A.E.E.) trató de implantar un nuevo sistema computadorizado de lectura de contadores que miden el consumo de energía eléctrica de los abonados. El cambio propuesto trajo fricción entre la A.E.E. y la Unión de Trabajadores de la Industria Eléctrica y Riego de Puerto Rico (U.T.I.E.R.). Como consecuencia de esto, la U.T.I.E.R. comenzó una serie de acciones concertadas destinadas a objetar el uso del equipo para la lectura electrónica y presionar a la A.E.E. para que desistiese de su uso. Para esa época, el empleado Agustín de Jesús Montero era miembro y líder de la U.T.I.E.R. Como parte De las actividades gremiales, éste se dirigió al personal de oficina de la A.E.E. para tratar de convencerlos de que abandonaran sus puestos de trabajo y se unieran al paro decretado por la U.T.I.E.R.

El señor De Jesús Montero se acercó además a otra serie de empleados para tratar de convencerlos también de que respaldaran el movimiento sindical. En una ocasión increpó repetidamente en voz alta, desde su automóvil, a tres (3) empleados de la A.E.E. que estaban tomando el entrenamiento del equipo objetado. Les manifestó que con sus actuaciones le estarían privando a él y a otros compañeros de sus

mino a·la parte recurrida para comparecer. Ésta ha comparecido, y estando en posición de decidir, así procedemos a hacerlo sin ulteriores procedimientos.

I

*Procedimiento para poner en vigor un laudo de arbitraje al amparo del Art. 9(2)(c) de la Ley de la Junta de Relaciones del Trabajo*

■ El Art. 9(2)(c) de la Ley de Relaciones del Trabajo de Puerto Rico, *supra*, dispone:

> (c) A los fines de promover la negociación colectiva, la Junta podrá, en el ejercicio de su discreción, ayudar a poner en vigor laudos de arbitraje emitidos por organismos competentes de arbitraje, bien designados de acuerdo con cualquier convenio colectivo firmado por un patrono y una organización obrera, o en virtud de cualquier acuerdo firmado por una organización obrera y un patrono. Después de emitido un laudo de arbitraje, la Junta, a solicitud de cualquiera de las partes en el procedimiento de arbitraje, podrá dar su consejo o podrá, si fuere requerida para ello, a nombre de la parte que lo solicite, entablar acción legal adecuada ante el Tribunal Supremo de Puerto Rico para que se ponga en vigor el laudo de arbitraje.

■ Con relación a los laudos de arbitraje, la parte a favor de la cual se dicta tiene la opción de recurrir directa-

---

empleos. También trató de convencer a una dueña de casa que era visitada por los empleados que recibían entrenamiento para que no dejara que le leyeran el contador. Los empleados que estaban recibiendo entrenamiento expresaron que se sintieron amedrentados y preocupados en cuanto a su seguridad personal.

Por estas actuaciones, la A.E.E. suspendió sumariamente de empleo y sueldo al señor De Jesús Montero.

La A.E.E. y la U.T.I.E.R. sometieron a arbitraje la procedencia de la suspensión sumaria previa a la ventilación en su fondo de los méritos de los cargos presentados. En este proceso no era procedente que el Oficial Examinador pasara juicio sobre las alegaciones de la U.T.I.E.R. ni sobre la conducta de la A.E.E. en formulación de cargo; sólo le correspondía resolver lo relacionado con la suspensión sumaria del señor De Jesús Montero.

Luego de desfilada la prueba sobre la suspensión sumaria, el Oficial Examinador consideró que no existía razón fundada para tal actuación y emitió una Resolución Parcial a esos efectos. La A.E.E. acogió la decisión, reinstaló al señor De Jesús Montero y le "pagó parte de los salarios dejados de percibir por el empleado, o sea, del 10 de agosto de 1990 al 27 de abril de 1991. Esta dejó de pagar el periodo entre el 25 de junio de 1990 al 9 de agosto de 1990".

mente al Tribunal Superior para solicitar se ponga en vigor, o puede solicitar de la Junta su ayuda para ponerlo en vigor. Al amparo del Art. 9(2)(c), *supra*, la función de la Junta es la de proveer a la parte beneficiada por un laudo de arbitraje un servicio, o sea que ésta funge como abogado o representante de la parte victoriosa. Los laudos de arbitraje, en sí, no constituyen adjudicaciones de la Junta. No son dictámenes, órdenes o resoluciones de controversias obrero-patronales adjudicadas por vía del procedimiento cuasijudicial de la Junta.(3) El laudo de arbitraje proviene de un procedimiento externo a la Junta.

En *J.R.T. v. P.R. Telephone Co., Inc.*, 107 D.P.R. 76, 80–81 (1978), expresamos que "[e]l remedio concedido por el Art. 9(2)(c) de la Ley de Relaciones del Trabajo de Puerto Rico (29 L.P.R.A. Sec. 70(2)(c)) para acudir con el laudo de arbitraje a la Junta de Relaciones del Trabajo en busca de ayuda para ponerlo en vigor, es de naturaleza procesal o adjudicativa y se asemeja en su propósito al trámite para ejecución de sentencia". El procedimiento establecido por el citado Art. 9(2)(c) es discrecional. Por lo tanto, luego que una parte presenta ante el Secretario de la Junta una declaración jurada solicitando se ponga en vigor un laudo de arbitraje, la Junta inicia una investigación encaminada a determinar la validez del laudo.(4) Si

---

(3) Cabe señalar que en la Sec. 1.3 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. secs. 2102(a)(7) y 2102(b), (f) y (g), se excluye de la definición de "agencia" al Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos. En dicha sección, además, se define "adjudicación" como todo "pronunciamiento mediante el cual una agencia determina los derechos, obligaciones o privilegios que correspondan a una parte". Íd. De otra parte, "orden o resolución" se definen como "cualquier decisión o acción agencial de aplicación particular que adjudique derechos u obligaciones de una o más personas específicas, o que imponga penalidades o sanciones administrativas excluyendo órdenes ejecutivas emitidas por el Gobernador". Íd. De acuerdo con dicha ley, una "orden o resolución parcial", a su vez, es "la acción agencial que adjudique algún derecho u obligación que no ponga fin a la controversia total sino a un aspecto específico de la misma". Íd.

(4) El Art. V del Reglamento Núm. 2 de la Junta de Relaciones del Trabajo de Puerto Rico, San Juan, Departamento de Hacienda, Servicio de Compra y Suministro–División de Imprenta, 1957, pág. 34, dispone lo siguiente:

concluye que el laudo tiene algún defecto, le requiere al peticionario que retire la solicitud. Si éste se niega, la Junta desiste de continuar con el procedimiento. Lo mismo ocurre si la Junta se percata de que tratar de poner en vigor el laudo no contribuye a la política pública o que el laudo ya ha sido acatado.

■ Ahora bien, aun cuando la Junta determina que debe gestionar el poner en vigor el laudo, ésta debe agotar todos los medios a su alcance para lograr su cumplimiento antes de recurrir al Tribunal. En *Junta de Relaciones del Trabajo v. Eastern Sugar*, 69 D.P.R. 818, 821 (1949), expresamos que aunque el Art. 9(2)(c), *supra*, no exige "que la Junta requiera expresamente al patrono para que éste dé cumplimiento a un laudo arbitral antes de que pueda acudir [al Tribunal], *la mejor práctica* en casos de laudos de arbitraje debe siempre ser que la Junta requiera a la parte obligada a cumplirlo que así lo haga, y que acuda ante este Tribunal tan sólo cuando hubiere una negativa a cumplir con el laudo". (Énfasis suplido.)

Como se podrá observar, aunque con relación al Art. 9(2)(c), *supra*, la Junta no adjudica derechos de las partes propiamente, sino que asiste a la parte victoriosa fungiendo como su abogado o representante legal, no es menos cierto que para cumplir con este deber discrecional de ayudar a que se pongan en vigor laudos de arbitraje, la Junta pasa juicio sobre la petición y determina si ejercerá o no su

---

"Cualquier persona, empleado, patrono u organización obrera que solicite el consejo, y la ayuda de la Junta como se dispone en el Artículo 9(2)(c) de la Ley, deberá radicar una solicitud ante el Secretario de la Junta, jurada ante un Notario Público o cualquier otra persona autorizada por ley o por la Junta para tomar juramentos, conteniendo lo siguiente:

"(a) El nombre y la dirección postal del árbitro o árbitros y la fecha en que se emitió el laudo;

"(b) Una declaración de los esfuerzos realizados por el solicitante para conseguir el cumplimiento del laudo de arbitraje, y

"(c) Solicitud específica a la Junta, bien para que le aconseje o para que la Junta haga cumplir el laudo de arbitraje, o ambas cosas.

"Una solicitud para consejo y ayuda de la Junta de acuerdo con el Artículo 9(2)(c) podrá ser retirada por la persona, empleado, patrono u organización obrera, que la radique, sólo con el permiso de la Junta."

discreción en favor del peticionario. La petición de que se ponga en vigor el laudo presentado por la Junta ante el Tribunal representa el resultado de un dictamen favorable al peticionario. Cabe señalar, además, que antes de acceder a ordenar que se ponga en vigor un laudo de arbitraje, el Tribunal siempre le solicita a la parte obligada que comparezca y muestre causa por la cual no deba ponerse en vigor. Es luego de este trámite procesal que el Tribunal pasa juicio sobre la validez del laudo y decide si accede a lo solicitado y pone en vigor el laudo. Este procedimiento no representa otra cosa que una evaluación de la determinación previamente hecha por la Junta sobre la validez del laudo, una decisión de que el laudo de arbitraje debe ejercitarse. Mediante este procedimiento, vía una petición de que se ponga en vigor un laudo de arbitraje, se está realmente revisando una providencia dictada por la Junta con relación a la validez del laudo y la solicitud de la parte victoriosa.

## II

*Revisión judicial de los asuntos provenientes de las agencias administrativas a tenor con lo dispuesto en la Ley Núm. 92 de 5 de diciembre de 1988*

En 1991, mediante la Ley Núm. 92, *supra*, se enmendó la Sec. 7(a) y (b) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, con relación a la competencia del Tribunal Supremo, para que dispusiera de la forma siguiente:(⁵)

___

(⁵) En 1988 se aprobó la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico con el propósito de sistematizar y crear un cuerpo uniforme de reglas mínimas que toda agencia deberá observar al formular reglas y reglamentos que definan los derechos y deberes legales de una clase particular de personas. Esta ley también contiene un cuerpo de normas que gobiernan las determinaciones de una agencia en procesos adjudicativos al emitir una orden o resolución que define los derechos y deberes legales de personas específicas. La Sec. 4.1 de dicha ley, 3 L.P.R.A. sec. 2171, establece, con relación a la revisión judicial, que las disposiciones del Subcapítulo IV serán aplicables sólo a "aquellas órdenes, reso-

(a) El Tribunal Supremo, cada una de sus salas, así como cualquiera de sus jueces, pueden conocer en primera instancia de recursos de hábeas corpus y de aquellos otros recursos y causas que se determinen por ley. Además, revisará, según más adelante se indica, sentencias y resoluciones del Tribunal de Primera Instancia y casos pendientes en apelación o revisión ante el Tribunal Superior; y revisará, de acuerdo con los términos y condiciones establecidos por ley, las decisiones de los registradores de la propiedad. Los procedimientos establecidos en las leyes sobre elecciones e inscripciones subsistirán de acuerdo con las leyes vigentes.

(b) *Salvo lo dispuesto en el inciso (a) de esta Sección, las decisiones, resoluciones y providencias dictadas por organismos y funcionarios administrativos y por subdivisiones políticas del Estado Libre Asociado deberán ser revisadas por el Tribunal Superior* con competencia de acuerdo con los términos y condiciones establecidas por ley y por las reglas promulgadas por el Tribunal Supremo. Las decisiones de la Comisión para Ventilar Querellas Municipales serán revisadas de acuerdo a lo dispuesto en la Ley Núm. 81 de 30 de agosto de 1991. (Énfasis suplido.) 1991 (Parte 1) Leyes de Puerto Rico 848, 851.

La Sec. 13(a)(1) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, a su vez, se enmendó para disponer lo siguiente:

El Tribunal Superior conocerá de los siguientes asuntos:
(a) En lo civil:
(1) De toda apelación y recurso de revisión contra decisiones, órdenes y resoluciones de agencias administrativas, de acuerdo con los términos y condiciones establecidos por ley, excepción hecha de aquéllos de los cuales pueda conocer el Tribunal Supremo. Leyes de Puerto Rico, *supra*, pág. 852.

■ En la Exposición de Motivos de la Ley Núm. 92, *supra*, 1991 Leyes de Puerto Rico 848, 849, se expresa como una de las razones o motivos para las enmiendas a la

---

luciones y providencias dictadas por agencias o funcionarios administrativos que deban ser revisadas por el Tribunal Superior de Puerto Rico".

Al aprobarse la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico disponía, en su Sec. 7, Ley Núm. 11 de 24 de junio de 1952 (4 L.P.R.A. sec. 35), que el Tribunal Supremo tenía competencia para revisar las decisiones de la Junta de Relaciones del Trabajo, por lo que era a éste al que correspondía poner en vigor los laudos de arbitraje.

Ley de la Judicatura del Estado Libre Asociado de Puerto Rico el lograr "una completa uniformidad del procedimiento para la revisión judicial de las decisiones administrativas ...". Continúa exponiéndose que a estos efectos fue que dicha ley transfirió "al Tribunal Superior la competencia para revisar aquellas decisiones administrativas que todavía se revisa[ban] directamente ante el Tribunal Supremo, con la excepción de las decisiones de los Registradores ...". Íd. Otra de las razones para las enmiendas a la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico fue el "[lograr] una distribución más equitativa de la carga judicial" para así lograr mayor rapidez y evitar así la congestión de los casos sin resolverse. Íd.

Para poder determinar, en este caso, cuál es el tribunal con competencia para entender en una solicitud de la Junta de poner en vigor un laudo de arbitraje, es necesario que interpretemos y armonicemos las disposiciones de la Ley Núm. 92, *supra*, que enmendó la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico y el Art. 9(2)(c) de la Ley de Relaciones del Trabajo de Puerto Rico, *supra*. Al interpretar estas leyes debemos velar por que prevalezca el propósito legislativo. Nuestra función primordial es buscar y poner en vigor la intención legislativa, ajustando nuestra interpretación al fundamento esencial de la ley y de la política pública que la inspira. *Zambrana Maldonado v. E.L.A.*, 129 D.P.R. 740 (1992); *Vázquez v. A.R.P.E.*, 128 D.P.R. 513 (1991); *García Pagán v. Shiley Caribbean, etc.*, 122 D.P.R. 193 (1988); *Asoc. Médica de P.R. v. Cruz Azul*, 118 D.P.R. 669 (1987); *Passalacqua v. Mun. de San Juan*, 116 D.P.R. 618 (1985). En buena hermenéutica jurídica, disposiciones de distintas leyes que tengan que ver con la misma materia o que se complementen "deben ser interpretadas las unas a las otras, para cuando lo que es claro en uno de sus preceptos pueda ser tomado para explicar lo que resulte dudoso en otro". *Morales v. Adm. Sistemas de Retiro*, 123 D.P.R. 589, 596 (1989).

Véase, además, el Art. 18 del Código Civil, 31 L.P.R.A. sec. 18. Las leyes las debemos interpretar y aplicar sin desvincularlas del problema cuya solución persiguen, como "parte de un todo coherente y armonioso—el ordenamiento jurídico". G. García Valdecasas, *Parte general del derecho civil español*, Madrid, Ed. Civitas, 1983, pág. 111. Véase *Riley v. Rodríguez Pacheco*, 124 D.P.R. 733, 738 (1989).

Tomando en consideración los principios de hermenéutica jurídica antes expuestos y las normas de derecho previamente reseñadas, pasemos a interpretar, a tenor con las disposiciones de la Ley Núm. 92, *supra*, y el Art. 9(2)(c) de la Ley de Relaciones del Trabajo de Puerto Rico, *supra*, cuál es el tribunal con competencia para entender en una solicitud de la Junta de poner en vigor un laudo de arbitraje.

Con anterioridad a la aprobación de la Ley Núm. 92, *supra*, las disposiciones de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, complementadas por las de la Ley de Relaciones del Trabajo de Puerto Rico, establecían un esquema procesal mediante el cual el Tribunal Supremo revisaba directamente todas las decisiones y resoluciones de la Junta. En armonía con este propósito, el Art. 9(2)(c) de la Ley de Relaciones del Trabajo de Puerto Rico, *supra*, expresamente disponía que sería también el Tribunal Supremo el tribunal con competencia para, mediante solicitud de la Junta, poner en vigor un laudo de arbitraje.

En 1991, la Ley Núm. 92, *supra*, cambió este esquema. Surge con meridiana claridad que la Legislatura, al enmendar la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico en su Sec. 7(a) y (b), *supra*, sobre la competencia del Tribunal Supremo, y la Sec. 13(a)(1), *supra*, sobre la competencia del Tribunal Superior, transfirió a este último la competencia para la revisión judicial de todo asunto dimanante de la Junta. Tanto es esto así, que se dispuso que salvo las excepciones expresamente especifica-

das en el inciso (a) de la Sec. 7, *supra*, el Tribunal Superior sería el tribunal con competencia para revisar no sólo las *decisiones* y *resoluciones* dictadas por los organismos o funcionarios administrativos, sino también todas las *providencias* emitidas por éstos. Esta abarcadora fraseología indiscutiblemente refleja la intención legislativa de transferir a la competencia del Tribunal Superior toda la competencia que con anterioridad tenía el Tribunal Supremo sobre las agencias administrativas no específicamente excluidas en la reforma judicial. Resolvemos, pues, que el tribunal con competencia sobre una solicitud de la Junta para poner en vigor un laudo de arbitraje al momento de presentarse la solicitud ante este Tribunal el 27 de marzo de 1992 era el Tribunal Superior.

## IV

*Revisión judicial de los asuntos provenientes de las agencias administrativas a tenor con lo dispuesto en la Ley Núm. 21 de 13 de julio de 1992*

Ahora bien, esto no resuelve el problema en este caso, ya que mediante la Ley Núm. 21 de 13 de julio de 1992 se enmendó nuevamente la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, creándose un Tribunal de Apelaciones y reestructurando la competencia tanto del Tribunal Supremo como del Tribunal Superior.

En cuanto a la competencia del Tribunal Supremo, la Ley Núm. 21, *supra*, dispone en cuanto a la Sec. 7(a) y (b) lo siguiente:

> El Tribunal Supremo, cada una de sus salas, así como cualquiera de sus jueces pueden conocer los siguientes asuntos:
> (a) En primera instancia de recursos de hábeas corpus y de aquellos otros recursos y causas que se determinen por ley;
> (b) en apelación de toda sentencia final de cualquier tribunal inferior que plantee o resuelva una cuestión constitucional sustancial o que incluya la determinación de inconstitucionalidad de una ley, resolución conjunta, regla o reglamento de una

agencia o instrumentalidad pública, u ordenanza municipal al amparo de la Constitución de los Estados Unidos o de Puerto Rico. Si el Tribunal Supremo determinare que el caso o sentencia no plantea una cuestión constitucional sustancial, remitirá el caso al tribunal apelado para su tramitación por la vía ordinaria. 1992 (Parte 1) Leyes de Puerto Rico 130, 131–132.

Con relación a la competencia del Tribunal de Apelaciones y en cuanto a la Sec. 14(b), (c), (d) y (h), se dispuso:

(b) revisará, mediante auto de revisión, las decisiones de los siguientes organismos administrativos: Junta Azucarera, Junta de Salario Mínimo, *Junta de Relaciones del Trabajo* y Comisión Industrial ante la Sección Norte, de acuerdo con lo dispuesto en la Ley Núm. 170 de 12 de agosto de 1988, según enmendada;

(c) revisará, mediante auto de *certiorari* a ser expedido discrecionalmente, las sentencias que dicte el Tribunal Superior en apelaciones procedentes del Tribunal de Distrito o del Tribunal Municipal, y las dictadas en pleitos para apelar o revisar las decisiones, órdenes o resoluciones de organismos administrativos;

(d) revisará, mediante *certiorari* a ser expedido discrecionalmente, las resoluciones u órdenes interlocutorias del Tribunal Superior;

(h) aquellos que le sean referidos por el Tribunal Supremo. (Énfasis suplido.) 1992 (Parte 1) Leyes de Puerto Rico 130, 135–136.

En cuanto al Tribunal Superior, la Ley Núm. 21, *supra*, enmendó la Sec. 13(a) para que estableciera:

El Tribunal Superior conocerá en los siguientes asuntos:
(a) En lo civil:
(1) Ante la Sala de San Juan, exclusivamente todo recurso de revisión contra decisiones, órdenes y resoluciones de agencias administrativas, de acuerdo con los términos y condiciones establecidos con la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, excepción hecha de aquéllos de los cuales pueda conocer el Tribunal Supremo y el Tribunal de Apelaciones. 1992 (Parte 1) Leyes de Puerto Rico 130, 135.

El claro propósito de esta ley fue crear un Tribunal de Apelaciones. Al crearlo fue preciso, para lograr un todo ar-

monioso, reorganizar la competencia tanto del Tribunal Supremo como del Tribunal Superior. Ni el historial legislativo ni las enmiendas incorporadas por la Ley Núm. 21, supra, reflejan que fuera la intención del legislador otorgarle al Tribunal Supremo competencia, nuevamente, sobre las solicitudes de la Junta para que se pusieran en vigor laudos de arbitraje, dejando al Tribunal de Apelaciones la revisión de los demás asuntos dimanantes de la Junta. La competencia sobre asuntos provenientes de las agencias administrativas se distribuyó entre la Sala de San Juan del Tribunal Superior y la Sección Norte del Tribunal de Apelaciones. Surge con meridiana claridad que el esquema de la Ley Núm. 21, supra, es que el Tribunal Supremo sólo revise los asuntos provenientes de las agencias administrativas de forma discrecional y luego que el Tribunal de Apelaciones haya pasado juicio sobre éstos, ya fuere mediante revisión directa de la agencia (Sec.14(b), 4 L.P.R.A. sec. 37(b)), o mediante el auto discrecional de certiorari de las sentencias o resoluciones provenientes del Tribunal Superior (Sec.14(c), 4 L.P.R.A. sec. 37(c)).

Con relación a las leyes que regulan la jurisdicción y los procedimientos, reiteradamente hemos resuelto que "los estatutos que regulan la jurisdicción y el procedimiento, son de interés público, y empiezan á regir retroactivamente, ó más bien, que no son consideradas como retroactivas en tal sentido, que caigan bajo las restricciones [del Art. 3 del Código Civil]".[6] American Railroad Co. of P.R. v. Hernández, 8 D.P.R. 516, 520 (1905). Véanse: Texas Co. v. Sancho Bonet, Tes., 52 D.P.R. 658, 666–667 (1938); R.E. Bernier y J.A. Cuevas Segarra, Aprobación e intepretación de las leyes en Puerto Rico, 2da ed., San Juan, Pubs. J.T.S., 1987, Vol. I, Cap. 63.

---

[6] El Art. 3 del Código Civil, 31 L.P.R.A. sec. 3, dispone:

"Las leyes no tendrán efecto retroactivo, si no dispusieren expresamente lo contrario.

"En ningún caso podrá el efecto retroactivo de una ley perjudicar los derechos adquiridos al amparo de una legislación anterior."

14

■ También hemos resuelto que aunque en una ley no se haya dispuesto expresamente su efecto retroactivo, procede su aplicación retroactiva cuando dicha interpretación resulta la más razonable de acuerdo con el propósito legislativo. *Díaz v. Srio. de Hacienda*, 114 D.P.R. 865 (1983); *Warner Lambert Co. v. Tribunal Superior*, 101 D.P.R. 378 (1973).

Nos nos cabe la menor duda que la intención del legislador al crear el Tribunal de Apelaciones y concederle competencia sobre las decisiones de la Junta de Relaciones del. Trabajo fue que éste entendiese en la revisión de todos los asuntos que provinieran de la Junta que hasta ese momento eran revisados por el Tribunal Superior, incluyendo, claro está, las solicitudes al amparo del Art. 9(2)(c) de la Ley de Relaciones del Trabajo de Puerto Rico, *supra*, para poner en vigor los laudos de arbitraje.

Tomando en consideración todas las normas de hermenéutica jurídica antes expuestas, resolvemos que en el caso de autos el foro con competencia para entender en la solicitud de la Junta de que al amparo de las disposiciones del Art. 9(2)(c) se ponga en vigor un laudo de arbitraje, es el Tribunal de Apelaciones, Sección Norte.

Por todo lo antes expuesto, *se dictará sentencia remitiendo al Tribunal de Apelaciones la solicitud de la Junta de Relaciones del Trabajo de Puerto Rico al amparo del Art. 9(2)(c) de la Ley de Relaciones del Trabajo de Puerto Rico.*