# 2007 DTA 72

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN
PANEL IV**

BRENDA M. CORUJO ORRACA
Recurrida

v.

NATHAN BUDOFF MCKIBBEN
Peticionario

Núm. KLCE-07-00584

San Juan, Puerto Rico, a 21 de mayo de 2007

Panel integrado por su Presidente, el Juez López Feliciano,
la Juez Pabón Charneco y el Juez Hernández Serrano

Pabón Charneco, Jueza Ponente

## TEXTO COMPLETO DE LA RESOLUCIÓN

Comparece ante nos, Nathan Budoff McKibben, en adelante, el peticionario, solicitando la revisión de una Resolución emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante dicho dictamen, el tribunal *a quo* mantuvo paralizadas las relaciones paterno-filiales hasta que el perito designado en el caso culmine la evaluación del hijo del peticionario y determine si ciertamente ocurrió un alegado abuso sexual por parte de éste.

Por las razones que esbozamos a continuación, se deniega la expedición del auto solicitado.

**I**

Conforme surge del expediente ante nuestra consideración, las partes, a saber, el peticionario y Brenda M. Corujo Orraca, en adelante, la recurrida, son padres de dos (2) hijos, Jacobo, nacido el 25 de enero de 2002 y Lenka, nacida el 22 de agosto de 2004. El 18 de agosto de 2006, la recurrente interpuso Demanda de Divorcio por la causal de trato cruel. Previo a ello, la recurrida había presentado una Demanda sobre Alimentos *Pendente Lite*. Surge de la Demanda, entre otros extremos, lo siguiente:

"...

*9) La madre demandante (recurrida) ha ostentado siempre la custodia de sus dos hijos, a quienes tiene bajo su atención y cuidado exclusivo desde que presentó una querella bajo las disposiciones de la Ley 177, para el Bienestar y Protección de la Niñez. Acompañamos copia de la Orden de Protección emitida el 19 de abril de 2006 y la Resolución dictada el 26 de abril de 2006, y solicitamos del Honorable Tribunal tome conocimiento judicial de dicho proceso. Puntualizamos que la referida determinación judicial no extendió la Orden de Protección, "por entender que la situación planteada será atendida como un caso activo en la local II Departamento de la Familia...". (Cita directa de la Resolución). No obstante, según el mejor creer y conocer de la demandante (recurrida), la agencia gubernamental no ha actuado de manera alguna sobre la situación.*

*10) El asunto de las relaciones paterno-filiales y la investigación social sobre los hechos alegados en la Querella BPN06-0080 en el Tribunal de Primera Instancia, han sido atendidos en el caso de alimentos antes señalado KAL2006-0532(703). La seriedad de las alegaciones sobre los mismos, ante hechos que en su día serán materia de prueba, la madre demandante (recurrida) solicita para si con exclusividad la custodia y la patria potestad sobre sus dos hijos.*

...

*15) La demandante (recurrida) solicita que el plan de relaciones paterno-filiales que se contemple, sea cónsono con las investigaciones periciales ya iniciadas en el proceso del caso Civil KAL2006-0532. Hasta el presente, el padre solo se ha relacionado con la menor Lenka en visitas supervisadas y no se han reiniciado relaciones con el menor Jacobo, quien fue el menor objeto de la investigación...".* (Énfasis en el original.)

Véase, Anejo 7 del Apéndice.

Surge de la Orden de Protección emitida por el Tribunal de Primera Instancia en el Caso Núm. BPN-06-0080 lo siguiente:

*"DETERMINACIONES DE HECHOS:*

*JOHANNA BARRIEL, T.S. EMERGENCIAS SOCIALES. BRENDA CORUJO ORRACA, MADRE EN REPRESENTACION DE JACOBO BUDOFF 4 AÑOS Y LENKA BUDOFF CORUJO DE 19 MESES. EL PADRE SE ENCUENTRA DE VIAJE. EL MENOR LE VERBALIZA A LA ABUELA, CARMEN MERCEDES ORRACA AQUÍ PRESENTE "VAMOS A JUGAR A LOS DOCTORES CON UN TILIN, UN JUEGO QUE EL HACE CON SU PAPITO, SE DA CON PALITO EN EL CUERPO INCLUYENDO EL PENE. ESTAN VESTIDAS AMBAS. EN OTRAS OCASIONES LE DA CON EL TILIN EN LAS NALGAS. LAS MARACAS VAN ENTRE LAS NALGAS. EL NIÑO HA TENIDO PROBLEMAS DE ESTREÑIMIENTO Y SE LE SALE EL ESFINTER DEL ANO, PARTE DEL INTESTINO. EL CABALLERO TIENE TALLER EN LA CASA. SE LE PROHIBE AL CABALLERO REGRESAR AL HOGAR. PODRA PERMANECER EN EL HOGAR SI LOS NIÑOS NO ESTAN EN EL. EL DESALOJO DEL CABALLERO DEL HOGAR PROCEDERA SOLO SI LOS MENORES*

*NO PERMANECEN EN EL HOGAR.*"

Véase, Anejo 3 del Apéndice.

A su vez, se desprende del expediente que, previo a interponer la Demanda, el 4 de agosto de 2006, la Trabajadora Social asignada al caso presentó un Informe Social.

El 22 de agosto de 2006, el peticionario instó escrito intitulado *"Moción Reaccionando al Informe de la Trabajadora Social"*. Entre otros extremos adujo que se le había entrevistado individualmente en sólo dos (2) ocasiones y una (1) en conjunto con la recurrida, mientras a ésta se le había entrevistado en cuatro (4) ocasiones además de otras entrevistas con los abuelos paternos. Destacó que *"el desfase que contiene dicho Informe para ver (sic) visto en varias ocasiones a la demandante (recurrida) y a sus familiares que al aquí señalado (peticionario), siendo este (sic) el que motivo la evaluación del Trabajador Social"*. (Véase, Anejo 8 del Apéndice.) A su vez, planteó que del Informe se desprendía que la Trabajadora Social se había entrevistado con una sicóloga que determinó que no existía razón alguna que validara una sospecha de abuso sexual. Sobre las relaciones paterno-filiales se señaló:

"...

*e. Destacamos que del contenido del Informe de la Trabajadora Social no surgen motivos para privar a nuestro representado a mantener relaciones paterno-filiales con su hijo, aspecto que se le ha privado por meses. Según del propio testimonio de los familiares maternos. "el juego del Doctor es un juego que surgio (sic) se jugaba con todos los miembros de la familia desde que su hermana Lenca (sic) estaba por nacer." La Trabajadora Social omite incluir que dicho juego comenzo (sic) cuando la Sra. Brenda Corujo (recurrida) tenia (sic) que recibir inyecciones periodicamente (sic) por una incompatibilidad sanguinea (sic) y como parte de un tratamiento médico al estar embarazada de su hija menor. Es ahí que surge el juego del doctor en la medida de que el niño a temprana edad vio a su madre recibiendo ese tipo de tratamiento médico y a raíz de eso se le compró, con el beneplacito (sic) de toda la familia, un bulto de médico y con eso jugaban todos, y se examinaba a todo el mundo, incluyendo a la abuela materna, el cual según surge del informe de la Trabajadora Social se le atribuye la potestad de decir que el Sr. Budoff (peticionario) viene de una relación disfuncional en su seno familiar.*

...

*3. Finalmente llamamos la atención que en los hallazgos finales no surge información que sostenga las recomendaciones de la Trabajadora Social de que el Sr. Budoff (peticionario) no se puede relacionar de forma correcta y saludable con su hijo, el cual se le ha privado de verlo por un período de largos meses.*

*4. Por ello, no estamos de acuerdo en el método de trabajo que plantea la Trabajadora Social en cuanto a que el niño solamente se relacione una vez por semana por tres horas en Plaza Las Américas. Entendemos que un padre puede relacionarse con su hijo, en la playa o compartiendo las horas de comida, puesto que en la vida real los niños pasan más tiempo alimentandose (sic) y utilizando el tiempo de la alimentación como un método de compartir y conversar con sus padres, para establecer relaciones paternofiliales correctas.*

*6. No obstante, en ese ínterin nuestro cliente estaría dispuesto a tener visitas supervisadas estando los dos hijos y entendemos que las mismas se tienen que aumentar a tres (3) veces por semana aunque sea por el mismo período de tiempo. Entendemos que no todo el tiempo se den en Plaza Las Américas.*

..."."

Véase, Anejo 8 del Apéndice.

El 22 de agosto de 2006 se celebró una vista en el caso de alimentos Caso Núm. K AL 2006-0532. El foro de instancia acogió las recomendaciones de la Trabajadora Social y determinó que las relaciones paterno-filiales se llevarían a cabo todos los jueves de 1:00 a 4:00 p.m. bajo la supervisión del abuelo materno y su esposa, pudiendo ser en otros lugares. Se le concedió término a la representante legal de la recurrida para que se comunicara con el abogado del peticionario a fin de ampliar las relaciones paterno-filiales. El 31 de agosto de 2006, la recurrida presentó una moción en cumplimiento de la orden emitida. En la misma informó, *inter alia*, que los abuelos de los menores preferían que las relaciones paterno-filiales continuaran celebrándose de igual manera y que fuera en Plaza Las Américas. A su vez notificó que los abuelos maternos no tenían otros días disponibles durante el próximo mes. En relación a la selección del terapista, la recurrida planteó que no había acuerdo entre las partes.

El 6 de septiembre de 2006, el Tribunal de Primera Instancia emitió una Orden disponiendo que, de los abuelos maternos no estar disponibles, las partes debían proveer en un término de cinco (5) días otros recursos. Sobre el tema del terapista concedió igual plazo para que notificaran si había acuerdo o no. Por último apercibió a las partes que se abstuvieran de discutir sobre el proceso judicial frente a los menores.

Luego de ciertos trámites procesales, que incluyeron la selección del terapista, el 27 de septiembre de 2006 la recurrida presentó escrito titulado *"Moción Urgente en Solicitud de Paralización"*. Adujo:

"...

*1) En el día de hoy hemos recibido una carta de la Dra. Roschen Underwood, psicóloga clínica de la lista de peritos provista por la Trabajadora Social del Tribunal en la cual recomienda que las relaciones paterno-filiales sean detenidas hasta que pueda explorar unas manifestaciones del menor. Acompañamos la carta de la Dra. Underwood.*

*2) ... ".*

Véase, Anejo 14 del Apéndice.

A tales efectos, la recurrida solicitó la paralización de las relaciones paterno-filiales. Cabe apuntar que surge de la carta de la Dra. Underwood que la recurrida se comunicó con ella para indicarle que el menor Jacobo le *"había hecho declaraciones específicas de incidentes de abuso sexual por parte de su padre"*. Ante esta situación la Dra. Underwood recomendó que las relaciones paterno-filiales fueran suspendidas.

El 27 de septiembre de de 2006 se celebró una vista. En la misma se ordenó la paralización de las relaciones paterno-filiales provisionalmente hasta tanto se emitiera una evaluación al respecto.

Luego de ciertos trámites procesales, que incluyeron la contratación por parte del peticionario de su perito, el 4 de diciembre de 2006, la Oficina de Servicios de Relaciones de Familia le informó al tribunal *a quo* que el Informe Social estaba completado y a disposición del foro de instancia. En esa fecha se celebró una vista. Surge de la Minuta:

"...

*El Tribunal hace constar que la Trabajadora Social **menciona que faltan evaluaciones por finalizar**.*

*El Tribunal entiende que le **parece razonable que se busque otro de los especialistas sugeridos para una***

*evaluación de abuso sexual ante la recomendación de la Trabajadora Social.*

...

*El Tribunal indica a las partes que la Trabajadora Social ha ofrecido una lista de especialistas para evaluación.*

*Por acuerdo de las partes de (sic) escoge a la Dra. Doris González.*

*El Tribunal autoriza a la doctora Doris González para revisar el expediente. Ambos padres deberán pagar los costos de los servicios. Con respecto a prueba pericial adicional, privada, tanto de la demandante (recurrida), quien ya ha contactado a la doctora Mercado, como de la parte demandada (peticionario) quien solicita se autorice a la doctora De Lucca para el proceso de evaluación, se reservan su derecho a traerlos a la vista evidenciaría (sic) dependiendo de lo que surja de las recomendaciones del informe de la Trabajadora Social.*

*...".* (Énfasis suplido.)

Véase, Anejo 18 del Apéndice.

Se determinó que las relaciones paterno-filiales seguirían suspendidas. Asimismo, el Tribunal de Primera Instancia dictaminó que, ante la petición de que se nombrara un Defensor Judicial, probablemente nombraría a la Procuradora de Familia.

El 2 de febrero de 2007, el peticionario, mediante su nueva representación legal, instó escrito intitulado *"Moción Informando Perito y en Solicitud de Orden".* En el mismo le sometió al tribunal a la Trabajadora Social Rita Córdova como perito en Trabajo Social y solicitó autorización para que dicha profesional evaluara el Informe Social así como el expediente del caso, *inter alia.*

Luego de ciertos trámites procesales, el peticionario interpuso escrito titulado *"Moción Reiterando Intención de Impugnar Informe Social y Solicitando se Señale Vista".* Adujo:

*"1. Que en el caso de epígrafe las relaciones paterno-filiales supervisadas con el menor Jacobo Burdoff Corujo (peticionario) están paralizadas de forma provisional, a solicitud de la parte demandante (recurrida) Brenda Corujo Urraca (recurrida) y a tenor con recomendaciones vertidas por la Trabajadora Social a cargo del caso en Informe Social Complementario.*

*2. Que la paralización de las relaciones paterno-filiales supervisadas entre el peticionario y su hijo menor de edad se realizaron sin haberse antes celebrado una vista evidenciaria en la que éste pudiera presentar prueba en su favor.*

*3. Que la paralización de las relaciones paterno-filiales supervisadas se efectuaron sin siquiera haberse celebrado la Vista de Impugnación, del primer Informe Social presentado por la Trabajadora Social a cargo del caso, el 4 de agosto de 2006.*

...

*7. Que a pesar de la oportuna impugnación del primer informe rendido por la Trabajadora Social a cargo del caso, y ésta haber presentado un segundo Informe Suplementario, a la parte demandada (peticionaria) no se le ha brindado la oportunidad de una vista evidenciaria donde pueda presentar evidencia a los fines de*

*impugnar las recomendaciones que lo están privando de relacionarse con su hijo menor de edad Jacobo Budoff Corujo.*

*... ".*

Véase, Anejo 21 del Apéndice.

A tales efectos, solicitó la celebración de una vista evidenciaria a fin de impugnar las recomendaciones vertidas por la Trabajadora Social en su Informe.

El 7 de marzo de 2007 se celebró una vista. Entre otros asuntos, el Tribunal de Primera Instancia mantuvo en efecto la paralización de las relaciones paterno-filiales.

Inconforme, el peticionario acude ante nos. Procedemos a resolver.

## II

En su escrito, el peticionario plantea que incidió el Tribunal de Primera Instancia al no proceder a celebrar una vista de impugnación tan pronto se solicitó al rendirse el primer informe de la Trabajadora Social recomendando relaciones paterno-filiales una vez por semana en Plaza Las Américas; al determinar continuar suspendidas toda relación paterno-filial a pesar de que en la vista limitada celebrada la Trabajadora Social declaró que no tiene evidencia de validación de abuso sexual y que ante la mera sospecha de la posibilidad de abuso procede la suspensión de las relaciones paterno-filiales.

Plantea que erró el foro *a quo* al mantener suspendidas toda relación paterno-filial, a pesar de que en la vista limitada celebrada se demostró que en las recomendaciones vertidas por la Trabajadora Social medió prejuicio, parcialidad y error craso; al no permitir la celebración de una vista de impugnación del Informe de la Trabajadora Social; al declarar prematuro el señalamiento de vista de impugnación del Informe; al ordenar que un perito evaluara a la menor a los fines de determinar la existencia de abuso sexual sin antes celebrar una vista de impugnación; al mantener suspendidas toda relación paterno-filial sin existir incumplimiento alguno del programa de relaciones supervisadas; y al resolver que para impugnar el Informe de la Trabajadora Social es necesario esperar por la validación de abuso sexual por parte del perito asignado por el tribunal.

## III

El auto de *certiorari* es un remedio procesal utilizado para que un tribunal de mayor jerarquía pueda corregir un error cometido por un tribunal inferior. El referido recurso es aquél dispuesto por el Art. 4.006 (b) de la Ley Núm. 201 de 22 de agosto de 2003, según enmendada, conocida como *"Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003"*. Distinto a los recursos de apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de manera discrecional. Esta discreción, en nuestro ordenamiento jurídico, ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. No significa poder actuar en una forma u otra, haciendo abstracción del resto del derecho, porque, ciertamente, eso constituiría un abuso de discreción. Con relación al abuso de discreción, el Tribunal Supremo ha expresado:

*"El juez, so pretexto de ejercer su discreción, no puede olvidarse de, ni relegar a un segundo plano, los mandatos y dictados de nuestra Constitución y los de las leyes, pertinentes a la cuestión en controversia, que han tenido a bien promulgar los funcionarios de las Ramas Legislativa y Ejecutiva... Los tribunales estamos autorizados a interpretar las leyes cuando, entre otras, éstas no son claras o concluyentes sobre un punto en particular; cuando el objetivo, al realizarlo, es el de suplir una laguna en la misma, o cuando, con el propósito de mitigar los efectos adversos de la aplicación de una ley a una situación en particular, la justicia así lo requiere."*

*Depto. de la Familia v. Shrivers Otero*, 145 D.P.R. 351 (1998).

Por otro lado, la Regla 40 del Reglamento del Tribunal de Apelaciones señala los criterios que debe tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*. Dispone el referido precepto como sigue:

*"Criterios para expedición del auto de certiorari*

*El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:*

*(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.*

*(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.*

*(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia*

*(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.*

*(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.*

*(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.*

*(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia."*

Una vez el Tribunal de Apelaciones decide expedir el auto de *certiorari*, asume jurisdicción sobre el asunto en controversia y se coloca en posición de revisar los planteamientos en sus méritos. Asumir jurisdicción sobre un asunto, expidiendo el auto de *certiorari*, ha sido definido como la autoridad en virtud de la cual los funcionarios judiciales conocen de las causas y las deciden. Constituye la facultad de oír y resolver una causa y de un tribunal a pronunciar sentencia o resolución conforme a la ley. Dicha jurisdicción incluye la facultad de compeler a la ejecución de lo decretado, y puede decirse que es el derecho de adjudicar con respecto al asunto de que se trata en un caso dado. *J.R.T. v. A.E.E.*, 133 D.P.R. 1, 11 (1993). Si el Tribunal de Apelaciones asume jurisdicción sobre el asunto que tiene ante su consideración, mediante la expedición de un auto de *certiorari*, por entender que así se justifica a tenor con la referida Regla 40, cumple su función principal de revisar las decisiones del foro de instancia para asegurarse que las mismas son justas y que encuentran apoyo en la normativa establecida por este Tribunal. *Echevarría Jiménez v. Sucn. Pérez Meri*, 123 D.P.R. 664, 673 (1989); *Garriga Gordils v. Maldonado Colón*, 109 D.P.R. 817, 822-823 (1980).

El *certiorari* es un recurso extraordinario discrecional, que debe ser utilizado con cautela y solamente por razones de peso. *Pérez v. Tribunal de Distrito*, 69 D.P.R. 4, 7 (1948). Éste procede cuando no está disponible la apelación u otro recurso que proteja eficaz y rápidamente los derechos del peticionario. *Pueblo v. Tribunal Superior*, 81 D.P.R. 763, 767 (1960).

La denegatoria de expedir un auto de *certiorari*, no constituye una adjudicación en los méritos y es el ejercicio de la facultad discrecional del Tribunal Apelativo para no intervenir a destiempo con el trámite pautado por el foro de instancia, evitando que se dilate innecesariamente la resolución final del pleito. Regla 40

del Reglamento del Tribunal de Apelaciones, *supra*; *Filiberty v. Soc. de Gananciales*, 147 D.P.R. 834, 838 (1999).

La parte afectada con la denegatoria de expedirse el auto de *certiorari*, tiene a su favor el revisar el dictamen final, cuando se resuelva la causa de acción por el foro sentenciador. *Negrón Placer v. Srio. de Justicia*, 154 D.P.R. 79, 93 (2001); *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 D.P.R. 651, 658 (1997).

El Tribunal de Primera Instancia tiene la labor indelegable de velar y garantizar que los procedimientos y asuntos ante su consideración se ventilen sin demora. *Maldonado v Srio. de Rec. Naturales*, 113 D.P.R. 494 (1982). Los tribunales apelativos reconocen la difícil tarea y retos que recaen sobre los tribunales de instancia en sus esfuerzos por acelerar los procedimientos y efectivamente administrar un número creciente de casos, tanto en términos cuantitativos como en complejidad. Como norma general, se respetan las decisiones procesales tomadas por los jueces en el ejercicio prudente de su discreción para dirigir y conducir los procedimientos que ante ellos se siguen. Los jueces del Tribunal de Primera Instancia gozan de amplia discreción para gobernar esos procedimientos. Al ejercerla, deben conseguir un balance justo entre el interés de que los pleitos se vean y resuelvan en sus méritos y el interés de no permitir demoras innecesarias en el trámite judicial para evitar congestión en los calendarios y todas las controversias y gastos que ello genera a las partes *Lluch v. España Service Sta.*, 117 D.P.R. 729 (1986); *Fine Art Wallpaper v. Wolf*, 102 D.P.R. 451 (1974).

Gozan, además, de amplia facultad para disponer de los procedimientos ante su consideración de forma que se pueda asegurar la más eficiente administración de la justicia, *Vives Vázquez v. E.L.A.*, 142 D.P.R. 117 (1996), y están llamados a intervenir activamente para manejar los procesos y dirigirlos de forma tal que se logre una solución justa, rápida y económica de los casos según prescribe la Regla 1 de las de Procedimiento Civil, 32 L. P.R.A. Ap. III; *Vellón v. Squibb Mfg., Inc.*, 117 D.P.R. 838 (1986).

En armonía con tal normativa, la función de un tribunal apelativo en la revisión de controversias requiere que se determine si la actuación del tribunal de primera instancia constituyó un abuso de la discreción en la conducción de los procedimientos ante sí. Al realizar tan delicada función, un tribunal apelativo no debe intervenir con el ejercicio de esa discreción, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial. Véase, *Lluch v. España Service Sta., supra*; *Zorniak v. Cessna*, 132 D.P.R. 170 (1992).

Como la discreción está atada a la razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera, *Pueblo v. Sánchez González*, 90 D.P.R. 197 (1964), en la medida que el curso de acción de un tribunal en el ejercicio de su discreción para conducir los procedimientos sea irrazonable o poco sensato, en esa medida estará abusando de su discreción. De otro modo, no abusa de la discreción, si la medida que toma es razonable.

Por último, y con relación a determinaciones interlocutorias discrecionales procesales, los tribunales apelativos **no deben sustituir el criterio utilizado por el tribunal de primera instancia en el ejercicio de su discreción por el suyo propio, salvo cuando el tribunal de primera instancia ha incurrido en arbitrariedad o craso abuso de discreción**. *García v. Asociación*, opinión de 12 de julio de 2005, 165 D.P.R. ___ (2005), **2005 J.T.S. 108**; *Meléndez v. Caribbean Int'l News*, 151 D.P.R. 649 (2000).

## IV

En su escrito, el peticionario discute todos los errores planteados en conjunto aduciendo que las relaciones paterno-filiales han sido obstaculizadas y lesionadas desde el 19 de abril de 2006, fecha en que *"la madre (recurrida) de los menores, solicitó una orden de protección ex parte, aprovechando la ausencia del peticionario de epígrafe"*. (Véase, pág. 11 de la Petición de *Certiorari*.) Plantea que dichas relaciones fueron

reanudadas de forma supervisadas siendo, posteriormente, paralizadas. Entiende que las relaciones paterno-filiales se paralizaron sin haberse escuchado el testimonio de la Trabajadora Social y/o celebrado la vista de impugnación. A su vez, arguye que aun presentado el segundo Informe Social no se le ha dado oportunidad de celebrar una vista a fin de impugnar los escritos. Alega que una evaluación del expediente revela que la recurrida ha tratado de controlar y manipular la información a considerar por la Trabajadora Social. Aduce que el procedimiento seguido por la funcionaria es *"altamente inadecuado, incorrecto, y completamente parcializado"*.

Comencemos apuntando que surge de la Minuta de la vista celebrada lo siguiente:

*"A la vista señalada para el día de hoy, compareció la demandante (recurrida) por derecho propio. El demandado compareció representado de su abogada Lcda. Ana Paulina Cruz Vélez.*

*...*

*La licenciada Cruz informó tener varias preocupaciones, primero en cuanto a una vista que se ha tratado de celebrar con la trabajadora social Elda Albino, quien estaba citada para el día de hoy a los fines auscultar cuál era su posición en relación a las relaciones paterno-filiales supervisadas.*

*...*

*Además, la licenciada Cruz hizo referencia que también a solicitud de la parte demandante (recurrida) desde el otro abogado que tenía se designó a que la Procuradora de Familia interviniera en este caso, lo cual surge desde la minuta de la vista celebrada el 26 de enero de 2007, de que la Procuradora de Familia pudiera intervenir.*

*El Tribunal informó que su interés era que tanto la letrada como la abogada que estaba representando a la Sra. Corujo (recurrida) tuvieran la oportunidad de entrevistarse con la Procuradora y manifestar si había alguna objeción o impedimento que entendiera que existiere para que actuara como defensor judicial del menor.*

*La Lcda. Anabelle Vázquez, quien se encontraba en Sala en la mañana de hoy, informó que la licenciada Cruz dialogó con ella brevemente en la mañana de hoy, informó y le contestó que no tenía notificación respecto a comparecer como defensor judicial.*

*El Tribunal aclaró que se ha requerido formalmente, lo cual la intención del Tribunal no es requerírselo si existe algún impedimento, sólo lo sugirió a las partes auscultar su disponibilidad.*

*...*

*La licenciada Vázquez solicitó la oportunidad de examinar el expediente con detenimiento.*

*A preguntas del Tribunal, la Procuradora informó no estar preparada a los efectos de ver una vista para auscultar la recomendación que hizo la trabajadora social de mantener paralizada las relaciones paterno-filiales en el día de hoy.*

*El Tribunal se expresó a los efectos de que le preocupa que la licenciada Díaz renuncia sorpresivamente después de unas gestiones diligentes de ambas abogadas en el caso, lo cual eso provoca un problema de trámite.*

La parte demandante (recurrida) informó que vino para solicitar la posposición de la vista, ya que no tiene representación legal, solicitó se transfiera la vista para una fecha mas (sic) adelante que le de la oportunidad de conseguir representación legal por ser un caso complejo e importante para los menores.

...

Se concede turno posterior para que la Procuradora, licenciada Cruz y la dama se reúnan y determinar que vista si alguna se puede celebrar hoy.

La parte demandante (recurrida) informó no sentirse preparada a lo que el Tribunal informó no haber tomado ninguna determinación lo cual tomará en su momento y que no es una vista final o con sus conclusiones, es una vista para hacer una determinación provisional, si alguna que se deba hacer.

Llamado nuevamente el caso comparece a Sala la Trabajadora Social, Elda Albino.

...

El Tribunal designa a la licenciada Anabelle Vázquez, Procuradora, defensora judicial del menor.

El Tribunal informó que la Procuradora había informado no estar preparada para intervenir hoy porque tiene que estudiar el expediente, pero no ve ningún impedimento de que ella actúe por algún conflicto, por ser una persona neutral que entra al proceso.

El Tribunal informó que en el día de hoy había señalado una vista únicamente para darle la oportunidad a las partes de interrogar a la trabajadora social Elda Albino en cuanto al informe que se había presentado en fechas reciente (sic), el cual estaba sujeto a una actualización.

Además, informó el Tribunal que lo único que el Tribunal quiere hacer hoy es celebrar una vista a los fines de determinar si de forma provisional y sujeto a cualquier planteamiento que tenga a su bien hacer los abogados a la determinación que el Tribunal haga hoy procede tomar alguna medida en cuanto a este caso sobre las relaciones paterno-filiales.

A esos únicos efectos es que se escuchará el testimonio de la trabajadora social.

La parte demandante (recurrida) informó que había solicitado pospusiera la vista, lo cual el hecho de que la trabajadora social testifique se estaría llevando la vista a cabo.

El Tribunal informó que la vista del día de hoy se llevará a cabo y de la parte demandante (recurrida) tener algún planteamiento luego de la vista es su derecho hacer el planteamiento en moción por escrito.

La parte demandante (recurrida) informó tener entendido que sin representación legal no puede comparecer a una vista.

El Tribunal informó que dentro del remedio provisional que se intenta dar hoy, de existir algún remedio que se pueda dar, el Magistrado tiene la obligación de celebrar una vista y la va a celebrar con la objeción de la Sra. Brenda Corujo Urraca (recurrida), quien lo ha expresado por derecho propio.

...

El Tribunal instruyó a las partes a los efectos de que esta es una vista con un alcance limitado, a los efectos

*de hacerle preguntas a la Trabajadora Social, Elba Albino, sobre su recomendación en el informe del 1 de diciembre de 2006, y que fundamente esa recomendación.*

*...*

*Presentado el testimonio de la trabajadora social, **el Tribunal informó que a base de la información vertida para récord, el propósito de esta vista era confirmar el alcance de las recomendaciones de la trabajadora social, ciertamente bajo los hechos particulares de este caso, lo prudente es mantener paralizadas las relaciones paterno-filiales hasta que se culmine la evaluación que se ha ordenado con el Dr. Luis M. Sánchez Caso.***

***Esta evaluación va dirigida a que ese doctor finalmente sin ninguna otra interrupción de las partes, ni planteamientos de ninguna de las partes dirigidos a evitar que esto se culmine, dentro de las garantías de ese proceso evalué a las partes, al menor, y determine si valida o no finalmente algún abuso sexual en este caso, obviamente si no lo valida inmediatamente tomaría las medidas para al menos reglamentar un plan de relaciones paterno-filiales porque la recomendación de la trabajadora social va dirigida a que si no se valida las circunstancias están para que se pueda estructurar un plan de relaciones paterno-filiales con o sin supervisión.***

*Se ordena que la trabajadora social Elda Albino coordine con las partes para las citas correspondientes a Jacobo, el padre y la madre para que levante la información necesaria ese perito dirigida a someter el informe determinando si se valida o no el abuso sexual en los próximos 60 días.*

*... ".* (Énfasis suplido.)

Véase, Anejo 1 del Apéndice.

A la luz del tracto procesal esbozado detalladamente en la Parte I de esta Resolución y de la determinación recurrida, no hallamos base para intervenir con la determinación del Tribunal de Primera Instancia. Dicho foro, aun con la objeción de la recurrida la cual no contaba con representación legal, sentó a testificar a la Trabajadora Social siendo interrogada por la abogada del peticionario. A su vez, la magistrada de instancia formuló preguntas, no así la recurrida quien, conforme señalado, no contaba con asistencia legal. Lo anterior revela el interés de la magistrada de instancia de cumplir con su obligación y brindarle un proceso al peticionario a fin de auscultar si procedía reanudar las relaciones paterno-filiales.

Por otro lado, el peticionario nos plantea que en las recomendaciones de la Trabajadora Social medió prejuicio, parcialidad y error craso y que ha reflejado un método *"inadecuado, incorrecto y completamente parcializado"*. A fin se sustentar esta alegación, señala que del expediente surge que la recurrida *"constantemente ha estado inundando de información parcializada a la TS asignada al caso"*. Sin embargo, del expediente ante nuestra consideración, nada hay que avale esta alegación. Sabido es que los señalamientos ante los tribunales apelativos hay que sustentarlos con prueba adecuada. Meras alegaciones no son suficientes así como tampoco las conjeturas. *Com. Vec. Pro-Mej., Inc. v. J.P.*, 147 D.P.R. 750 (1999); *Pueblo v. López Guzmán*, 131 D.P.R. 867 (1992); *Henríquez v. Consejo Educación Superior*, 120 D.P.R. 194, 210 (1987).

Arguye el peticionario que el Informe Social preparado por la Trabajadora Social no valida abuso sexual alguno. Sin embargo, lo cierto es que tres (3) magistrados diferentes han, en diferentes ocasiones, ordenado la paralización de las relaciones paterno-filiales o limitado las mismas a unas supervisadas por las alegaciones.

A su vez, el peticionario plantea que incidió el foro de instancia al denegar, por prematura, la solicitud de señalamiento de vista de impugnación del Informe de la Trabajadora Social. Sobre el particular, el Tribunal de

Primera Instancia apuntó:

"...

*La licenciada Cruz hizo referencia a una moción que está reiterando la intención de impugnar el informe social de la trabajadora social.*

*El Tribunal ordenó que es prematura porque todavía no se ha culminado el informe, lo cual el informe del 1 de diciembre tiene una limitación y es que falta el informe del perito que iba a ser la doctora Underwood y ahora será el doctor Sánchez Caso."*

*Id.*

Concurrimos con el foro de instancia en que las solicitudes de impugnación presentadas durante el pleito han sido prematuras. Observamos que en la Minuta de 4 de diciembre de 2006, ya presentado el Informe Social, se mencionó que faltaban evaluaciones por finalizar y se recomendó buscar otro especialista para una evaluación del alegado abuso sexual. Aun en esta etapa falta el Informe del Dr. Sánchez Caso. Ante estas circunstancias, e inclusive cuando la recurrida no cuenta con representación legal, concediéndole término para ello, la celebración de una vista de impugnación no procedía, en esa etapa.

En cuanto al planteamiento de que la paralización de las relaciones paterno-filiales fueron realizadas por el Informe de la Dra. Underwood, se desprende del expediente que presentada la carta de dicha profesional se celebró una vista donde acudió el peticionario junto con su representante legal. Fue en esa vista que las relaciones paterno-filiales se paralizaron.

El peticionario, al expresar su posición, nos señala en múltiples ocasiones el trámite que debía haber llevado el Tribunal de Primera Instancia en el caso de autos. Declinamos intervenir con la tramitación que se está llevando a cabo. Lo cierto es que se han celebrado numerosas vistas donde el peticionario ha estado representado por un abogado y ha tenido participación activa en las mismas.

Es de recordar que el tribunal de instancia goza de amplia discreción para pautar el manejo de los casos ante su consideración, a fin de lograr la búsqueda de la verdad y que sean adjudicados de manera rápida y correctamente. Como foro intermedio apelativo, no vamos a intervenir con el ejercicio de tal autoridad, excepto se demuestre que medió craso abuso de discreción, que hubo una interpretación o aplicación errónea de una norma procesal o sustantiva de derecho y que la intervención revisora evitará perjuicio sustancial a la parte alegadamente afectada. *García v. Asociación, supra.* El peticionario no ha logrado convencernos que el tribunal *a quo* hubiera abusado de su discreción mediante el ejercicio irrazonable de la misma, por lo que no habremos de intervenir en esta etapa.

**V**

Por los fundamentos antes señalados, se deniega la expedición del auto solicitado.

Así lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones