EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Juan O. Cirino González<br><br>    Recurrido<br><br>         v.<br><br>Administración de Corrección, et al.<br><br>    Peticionarios | Certiorari<br><br>2014 TSPR 2<br><br>190 DPR ____ |

Número del Caso: CC-2010-898


Fecha: 9 de enero de 2014


Tribunal de Apelaciones: Región Judicial de San Juan, Panel I


Oficina de la Procuradora General:

        Lcda. Irene Soroeta Kodesh
        Procuradora General

        Lcda. Rosa E. Pérez Agosto
        Procuradora General Auxiliar


Abogado de la Parte Recurrido:

        Lcdo. Luis E. Duchesne Jiménez
        Lcdo. Luis D. Martínez Rivera


Materia: Ley de Reclamaciones y Demandas contra el Estado – emplazamiento al Estado cuando asume representación de funcionarios bajo la Ley 9 – 1975.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Juan O. Cirino González
     Recurrido

                             *Certiorari*

     v.

                              CC-2010-898

Administración de Corrección,
*et al.*
     Peticionarios

Opinión del Tribunal emitida por la Jueza Asociada señora Fiol Matta

En San Juan, Puerto Rico, a 9 de enero de 2014.

La inclusión del Estado en esta acción en daños y perjuicios contra funcionarios demandados en su capacidad personal y oficial nos requiere analizar si la decisión de asumir la representación legal de estos bajo las disposiciones de la Ley Núm. 9 de 26 de noviembre de 1975 guarda alguna relación con el requisito jurisdiccional del emplazamiento al Estado y la notificación requerida por la Ley de Reclamaciones y Demandas Contra el Estado.[1] En particular, debemos resolver si al proveerle

_____

[1] 32 L.P.R.A. sec. 3077, *et seq.*

representación legal a funcionarios que son demandados en su carácter personal, el Estado se somete voluntariamente a la jurisdicción del Tribunal como demandado en el mismo caso.

I

El 12 de julio de 2005, el señor Juan Cirino González, un confinado bajo la custodia del Estado, presentó, por derecho propio, una demanda contra la Administración de Corrección por daños y perjuicios, alegando que el 22 de abril de ese año fue agredido por varios guardias penales. Poco después, el 26 de septiembre de 2005, el señor Cirino González presentó, también por derecho propio, una primera demanda enmendada para incluir a cuatro oficiales penales, en su capacidad oficial y personal.[2] En ninguna de esas ocasiones se expidieron los emplazamientos correspondientes.

Por su parte, el 26 de enero de 2006, el Tribunal de Primera Instancia le asignó representación legal de oficio al señor Cirino González pero no fue hasta el 24 de agosto de 2006 que un abogado finalmente asumió dicha representación.[3] El 29 de mayo de 2007 el foro de instancia

_____

[2] Estos son: Teniente Frank Marcucci, Sargento Ángel Burgos, y los oficiales de custodia Pedro Medina Cotto y José Acevedo Cotto.

[3] El 11 de agosto de 2005 el TPI intentó asignar la representación legal a la Corporación de Acción Civil y

ordenó la expedición de los emplazamientos cuyo diligenciamiento estuvo, aparentemente, a cargo de la Oficina de Alguaciles de dicho tribunal.[4] Como consecuencia de lo anterior, el 3 de agosto de 2007 se emplazó al co-demandado Marcucci y a la sociedad legal de gananciales compuesta por éste y su esposa, así como a la Administración de Corrección. De igual forma, el 17 de septiembre se emplazó personalmente al co-demandado Burgos.[5] Ahora bien, no se logró emplazar a los co-demandados Medina Cotto y Acevedo Cotto, pues estos ya no eran empleados de la Administración de Corrección.[6] La parte demandante-peticionaria sostiene que nunca se le notificó el diligenciamiento negativo en cuanto a estos dos co-demandados y por eso entendió que habían sido debidamente

Educación, pero el 24 de enero de 2006 dicha entidad notificó su decisión de no asumir la misma.

[4] En su Alegato, la parte demandante recurrida informa que el diligenciamiento negativo de los co-demandados Acevedo Cotto y Medina Cotto "no fue[ron] notificado[s] al Recurrido hasta la fecha de la Sentencia y aunque se dialogó con la Oficina de los Alguaciles sobre los emplazamientos en varias ocasiones con el Alguacil Carlos Vélez a la ext. 2171 del Tribunal de San Juan". Alegato de la Parte Recurrida, págs. 3-4. De igual forma, la parte recurrida sostiene que "dada la representación de oficio, fue el propio ELA quien según solicitado e instruido por el Tribunal diligenció los emplazamientos". Alegato de la Parte Recurrida, pág. 26. No hay constancia en el expediente de los emplazamientos de ninguno de los co-demandados.

[5] También se emplazó a la sociedad legal de gananciales compuesta entre éste y su esposa.

[6] El señor Medina Cotto fue destituido de su puesto el 22 de julio de 2007 y el señor Acevedo Cotto fue suspendido del suyo indefinidamente.

emplazados. No obstante, en ningún momento se emplazó al Secretario de Justicia ni se le envió copia de la demanda o el emplazamiento.

El 14 de noviembre de 2007, el Estado Libre Asociado solicitó un término adicional de sesenta días para evaluar la solicitud de representación legal al amparo de la Ley Núm. 9 de 26 de noviembre de 1975 presentada por el co-demandado Burgos.[7] El foro de instancia atendió dicha moción expresando que no había "nada que proveer" y añadió que "[s]i no ha asumido representación legal, no tiene derecho a solicitud alguna".[8] Poco después, el 23 de enero de 2008, el Estado solicitó, a nombre de los co-demandados Marcucci y Burgos, la desestimación del caso alegando que no se habían agotado los remedios administrativos.[9] Sin embargo, no fue hasta el 14 de octubre de 2008 que el Estado Libre Asociado compareció formalmente "en representación del Teniente Frank Marcucci y el Sargento Ángel L. Burgos por

---

[7] No surge con claridad cuándo fue que el señor Burgos solicitó dichos beneficios.

[8] Apéndice petición de *certiorari*, pág. 144.

[9] Esta solicitud fue declarada sin lugar por el foro de instancia. Esta fue la primera comparecencia de los abogados del ELA en representación de los co-demandados tras aprobarse la solicitud de estos al amparo de la Ley Núm. 9.

la reclamación de daños y perjuicios en su carácter personal".[10]

El 9 de diciembre de 2008, se presentó una segunda demanda enmendada a los efectos de clarificar que la causa de acción del demandante era por alegadas violaciones a sus derechos civiles. Sin someterse a la jurisdicción del Tribunal, el 26 de febrero de 2009, el Estado Libre Asociado presentó una moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil. Adujo, entre otras razones, que no se le había emplazado adecuadamente según la Regla 4.4(g) de dicho cuerpo normativo, toda vez que no se envió copia de la demanda y del emplazamiento al Secretario de Justicia, tal y como exige dicha disposición.[11] Por tanto, el ELA sostuvo que el tribunal no había adquirido jurisdicción sobre su persona. Además, alegó que había transcurrido el periodo de seis meses para emplazar al Secretario dispuesto por la Regla 4.3 de Procedimiento Civil.

Para responder a las alegaciones del Estado, el 15 de abril de 2009, el demandante presentó varios escritos. En

---

[10] (Énfasis suplido) Sentencia del Tribunal de Apelaciones, pág. 3; apéndice petición de *certiorari*, pág. 5. El ELA alega que "con la excepción de una sola ocasión…la representación legal de los funcionarios ha sido distinta a la representación legal del ELA". Petición de *certiorari*, n. 6.

[11] El ELA también alegó falta de jurisdicción sobre la materia, repitiendo el argumento de que no se habían agotado los remedios administrativos expuesto por los co-demandados Marcucci y Burgos.

el primero, se opuso a la moción de desestimación alegando que el Estado se debió haber dado por emplazado al concederle a los co-demandados Marcucci y Burgos el beneficio de representación legal al amparo de la Ley Núm. 9. Según el demandante, el ELA se sometió voluntariamente a la jurisdicción del tribunal al otorgar representación legal a los co-demandados y al comparecer al foro judicial en el ejercicio de dicha representación. El segundo escrito de la parte demandante presentado el 15 de abril de 2009 fue una tercera demanda enmendada para incluir expresamente al ELA como parte co-demandada, "para así evitar que [el Estado] siguiera dilatando los procesos con mociones de desestimación a pesar de que ya se había sometido a la jurisdicción [del tribunal]".[12] Finalmente, el demandante presentó una moción solicitando la expedición de emplazamientos contra el Estado Libre Asociado.

El Tribunal de Primera Instancia declaró con lugar la moción de desestimación presentada por el ELA en representación de la Administración de Corrección. El tribunal resolvió que no tenía jurisdicción sobre la persona del ELA porque la Administración de Corrección no era una corporación pública sino una agencia y había que enviar copia de la demanda y del emplazamiento al Secretario de Justicia según ordena la Regla 4.4(g) de Procedimiento Civil, lo que no se hizo en este caso. De

---

[12] Alegato de la Parte Recurrida, pág. 8.

igual forma, concluyó que el ELA era "parte indispensable de este pleito toda vez que era imprescindible incluirlo como representante de la Administración de Corrección y de todos los oficiales de custodia". En cuanto a esto explicó que: "El ELA supliría la capacidad legal de su agencia y es entonces cuando el Tribunal adquiriría jurisdicción sobre la misma. Por otro lado, el ELA, a través del Departamento de Justicia, es el representante legal de los oficiales de custodia que están demandados por daños y perjuicios en su carácter oficial y personal…Este Tribunal no puede entrar en los méritos ni adjudicar la reclamación de autos sin la presencia de ELA".[13]

Acto seguido, el Tribunal de Primera Instancia declaró sin lugar la tercera demanda enmendada que incluía al ELA, toda vez que "[l]a representación legal del demandante pretende remediar lo que hace dos (2) años debió subsanar".[14] Por tanto, también desestimó la causa de acción contra los co-demandados Marcucci y Burgos.[15] Finalmente, desestimó con perjuicio la causa de acción contra los co-demandados Medina Cotto y Acevedo Cotto "toda vez que éstos

---

[13] Sentencia del Tribunal de Primera Instancia, pág. 8; apéndice petición de *certiorari*, pág. 48.

[14] *Íd.*, pág. 7; apéndice petición de *certiorari*, pág. 47.

[15] De la sentencia no surge si dicha desestimación fue con o sin perjuicio.

no fueron emplazados, ocasionando así que este Tribunal no adquiriera jurisdicción sobre sus personas".[16]

Ante el Tribunal de Apelaciones, el señor Cirino González alegó que el foro de instancia erró al resolver que no había adquirido jurisdicción sobre el ELA. Nuevamente, sostuvo que la decisión del ELA en cuanto a los beneficios de la Ley Núm. 9 puso en aviso al Estado sobre el pleito en su contra y que al asignarle representación legal a los co-demandados Marcucci y Burgos el Estado se sometió a la jurisdicción del Tribunal. Además, cuestionó la apreciación del foro primario de que el ELA era parte indispensable y, por tanto, alegó como error la desestimación de la demanda contra los co-demandados emplazados por falta de parte indispensable. En cuanto a la desestimación con perjuicio de la causa de acción contra los co-demandados Medina Cotto y Acevedo Cotto, el demandante expuso que se le debía dar una oportunidad para emplazarlos nuevamente, una vez el ELA proveyera sus últimas direcciones conocidas o, en defecto de esto, se le debía permitir emplazarlos por edicto. El ELA presentó sus argumentos en contrario mediante una comparecencia especial y los co-demandados Marcucci y Burgos comparecieron por vía

---

[16] Sentencia del Tribunal de Primera Instancia, pág. 9; apéndice petición de *certiorari*, pág. 49. Como adelantamos, la parte demandante arguye que se enteró por primera vez del diligenciamiento negativo en cuanto a los co-demandados Medina Cotto y Acevedo Cotto por vía de la Sentencia del foro primario.

de la representación legal otorgada por el Departamento de Justicia.

El foro intermedio revocó la sentencia del Tribunal de Primera Instancia. Concluyó que para emplazar al ELA era necesario cumplir con la Regla 4.4 de Procedimiento Civil,[17] sin embargo resolvió que el Estado compareció voluntariamente y, aunque alegó falta de jurisdicción sobre su persona, se sometió a la jurisdicción del tribunal al comparecer como representante legal de los co-demandados Marcucci y Burgos. El foro apelativo ató la jurisdicción a la notificación al Estado requerida por la Ley de Reclamaciones y Demandas Contra el Estado y entendió que como la Administración de Corrección conocía del pleito y sus implicaciones, "puede razonablemente concluirse que al comparecer para representar a los funcionarios demandados en su carácter personal al amparo de la Ley Núm. 104, *supra,* el ELA en representación de la Administración de Corrección, se sometió a la jurisdicción del tribunal".[18] Utilizando la jurisprudencia de este Tribunal que discute el requisito de notificación al Secretario de Justicia cuando se demanda al Estado,[19] en particular, el que el

---

[17] La Sentencia del Tribunal de Apelaciones no indica si se refiere al inciso (f) o (g) de dicha Regla.

[18] Sentencia del Tribunal de Apelaciones, pág. 17; apéndice petición de *certiorari*, pág. 19.

[19] Cabe destacar que en ningún momento el ELA ha alegado que se haya incumplido el término de 90 días para notificar al

propósito central de dicha notificación es poner en aviso al gobierno de la posible existencia de un pleito en su contra, el foro apelativo concluyó que cuando el Estado otorgó el beneficio de representación legal a los co-demandados, se cumplió el propósito de la notificación que establece la Ley de Reclamaciones y Demandas contra el Estado. Es decir, que se hizo innecesario cumplir con la Regla 4.4 de Procedimiento Civil pues al estar adecuadamente notificado del pleito y aun así asumir la representación legal de los co-demandados, el ELA se sometió voluntariamente a la jurisdicción del tribunal.[20]

En lo que respecta a los emplazamientos de los co-demandados Medina Cotto y Acevedo Cotto, el foro apelativo resolvió que "[d]ada su condición de confinamiento, es evidente que el apelante no tiene la facilidad que tendría cualquier otro demandante para diligenciar los correspondientes emplazamientos".[21] Por tanto, había justa

---

Secretario de Justicia bajo la Ley de Reclamaciones y Demandas contra el Estado.

[20] Además, el foro apelativo destacó que los hechos alegados en la demanda original ocurrieron dentro de un centro correccional y que la Administración de Corrección realizó una investigación sobre los sucesos en los que se vieron involucrados los oficiales correccionales codemandados. Sentencia del Tribunal de Apelaciones pág. 18; apéndice petición de *certiorari*, pág. 20.
En todo momento, el tribunal intermedio equiparó el requisito de notificación de la Ley de Reclamaciones y Demandas Contra el Estado con las normas de emplazamiento establecidas en la Regla 4.4 de Procedimiento Civil y con la figura de la sumisión.

[21] *Íd.*

causa para la tardanza en diligenciar los emplazamientos.[22] De igual forma, resaltó que "fue el ELA quien tuvo a su cargo la gestión de realizar los diligenciamientos y quien conoce y tiene control de la información que hubiera permitido diligenciar los emplazamientos contra los codemandados que cesaron de trabajar para la Administración de Corrección".[23] En fin, el Tribunal de Apelaciones dejó sin efecto la desestimación de la demanda contra todos los co-demandados, acreditó la jurisdicción del foro de instancia sobre el ELA y autorizó el diligenciamiento de los emplazamientos a los co-demandados Medina Cotto y Acevedo Cotto. Una moción de reconsideración presentada por el Estado fue declarada sin lugar.

Inconforme con esa determinación y aun sin someterse a la jurisdicción del tribunal, el Estado Libre Asociado presentó una petición de *certiorari* ante esta Curia señalando la comisión de varios errores. En primer lugar, el Estado sostiene que en este caso se obviaron las reglas de emplazamiento de manera insubsanable, rechazando así la aseveración de que se sometió voluntariamente a la

---

[22] Al así resolver, el foro intermedio no entró en los méritos de la alegación del demandante a los efectos de que nunca fue notificado del diligenciamiento negativo contra los co-demandados Medina Cotto y Acevedo Cotto. Sin embargo, sí enfatizó que el demandante Cirino González ha demostrado en todo momento que no se ha cruzado de brazos y que tiene interés en su demanda.

[23] (Énfasis suplido) Sentencia del Tribunal de Apelaciones, págs. 20-21; apéndice petición de *certiorari* págs. 22-23.

jurisdicción del tribunal al haber otorgado representación legal a los co-demandados Marcucci y Burgos al amparo de la Ley Núm. 9 de 26 de noviembre de 1975. Además, cuestionó el que el Tribunal de Apelaciones determinara que la condición de confinado, por sí sola, le otorgó al señor Cirino González justa causa para la demora en el emplazamiento o que obligara a concluir que éste carecía de medios para diligenciar los emplazamientos.[24]

En cuanto a la insuficiencia del emplazamiento, el Estado sostiene que la Administración de Corrección es una agencia gubernamental que carece de personalidad jurídica propia, por lo cual se requiere cumplir con lo establecido en la Regla 4.4(g) de Procedimiento Civil, es decir, que hace falta entregar copia de la demanda y el emplazamiento al Secretario de Justicia. Además, sostiene el Estado que el demandante también violó la Regla 4.3 de Procedimiento Civil que exige que se diligencien los emplazamientos dentro de los seis meses de su expedición. Cuestiona así el que hubiera justa causa para que el demandante se tardara casi dos años para emplazar adecuadamente al Estado, en referencia a la moción que el demandante presentó el 2009 para que se expidieran los emplazamientos dirigidos al ELA.

---

[24] El ELA señala que los errores de emplazamiento se dieron luego de que el demandante obtuviera representación legal, por lo que se torna irrelevante su estatus como confinado. Sin embargo, no cuestiona la determinación del Tribunal de Apelaciones a los efectos de que el diligenciamiento de los emplazamientos en este caso estaba a cargo del propio ELA.

En cuanto a la tesis de sumisión voluntaria, el ELA alega que no llevó a cabo acto sustancial alguno que equivalga a someterse a la jurisdicción del tribunal. Por el contrario, entiende que "[l]a intervención del Secretario de Justicia como representante legal de un funcionario beneficiado por la ley sólo puede tener efecto con relación al funcionario mismo en su carácter personal, en vista de que el rol del Estado está estrictamente limitado a lo dispuesto en la ley".[25] Por tanto, sostiene que no debe concluirse que asumir tal representación legal lo haga automáticamente parte en el pleito. Finalmente, el ELA plantea que la jurisprudencia sobre la notificación al Secretario de Justicia requerida por la Ley de Reclamaciones y Demandas Contra el Estado es impertinente para efectos de determinar si hay jurisdicción sobre la persona, ya sea a través del emplazamiento o la sumisión voluntaria.

El 18 de marzo de 2011 expedimos el auto de certiorari. En su alegato, el señor Cirino González insiste en varios asuntos. En primer lugar, que no fue debidamente notificado del diligenciamiento negativo de los emplazamientos contra los co-demandados Medina Cotto y Acevedo Cotto, por lo que no procedía la desestimación con perjuicio ordenada por el foro de instancia. Además, alega que hubo justa causa para no emplazar a estos funcionarios

---

[25] Petición de certiorari, pág. 11.

dentro del término de seis meses. En segundo lugar, insiste que la decisión del ELA de proveer representación legal a los co-demandados Marcucci y Burgos constituyó un sometimiento voluntario por parte del Estado.[26] Esto, pues al tomar esa decisión el ELA conocía necesariamente que había una demanda en su contra y las implicaciones de esta y, comoquiera, decidió comparecer voluntariamente.[27] Por tanto, según el demandante, como el ELA conocía de la demanda, no había que cumplir con los requisitos de notificación de la Ley Núm. 104.[28] Por último, afirma el demandante recurrido que el ELA no es parte indispensable en este caso por lo que tampoco se debió desestimar la causa de acción contra los co-demandados Marcucci y Burgos por esa razón. Resolvemos.

II

Para resolver adecuadamente esta controversia, tenemos que atender varios asuntos procesales y sustantivos que requieren un análisis separado pero relacionado. Comencemos

---

[26] Para ello, hace un análisis del proceso de solicitud, evaluación y otorgación de los beneficios bajo la Ley Núm. 9.

[27] En ese sentido, sostiene que la segunda y tercera demandas enmendadas fueron únicamente con el propósito de evitar la dilación y no un reconocimiento de que el tribunal aún no tenía jurisdicción sobre el ELA. Alegato de la Parte Recurrida, pág. 17.

[28] El recurrido también señala que el Estado "no levantó en momento alguno la falta de jurisdicción por no cumplir con los requisitos de notificación de la Ley Núm. 104, *supra*". (Énfasis suplido) *Íd.*, pág. 18.

con la interrogante de si hay jurisdicción sobre la persona del Estado Libre Asociado. En nuestro ordenamiento procesal, un tribunal adquiere jurisdicción sobre la persona del demandado de dos maneras distintas: cuando se utilizan adecuadamente los mecanismos procesales de emplazamiento establecidos en las Reglas de Procedimiento Civil o cuando la parte demandada se somete voluntariamente a la jurisdicción del tribunal, explícita o tácitamente.[29] Debemos analizar si en este caso se cumplieron los requisitos de alguna de esas dos vías; comencemos con el emplazamiento.

El emplazamiento es el mecanismo procesal principal que permite al tribunal adquirir jurisdicción sobre el demandado de forma tal que éste quede obligado por el dictamen que finalmente se emita.[30] El propósito del emplazamiento es notificar a la parte demandada, a grandes rasgos, que existe una acción judicial en su contra para que, si así lo desea, ejerza su derecho a comparecer en el juicio, ser oído y presentar prueba a su favor.[31] Se trata de una exigencia del debido proceso de ley, "por lo que se

---

[29] *Márquez v. Barreto*, 143 D.P.R. 137, 143 (1997).

[30] *Banco Popular v. S.L.G.*, 164 D.P.R. 855, 863 (2005).

[31] *Id; Global Gas, Inc. v. Salaam*, 164 D.P.R. 474, 480 (2005); *Quiñones Román v. Cía. ABC*, 152 D.P.R. 367, 374 (2000).

requiere una estricta adhesión a sus requerimientos".[32] La Regla 4 de Procedimiento Civil provee los criterios para determinar si el señor Cirino González emplazó adecuadamente a la Administración de Corrección. Para empezar, debemos precisar cuál inciso de dicha regla cubre la situación que presenta este caso.

La Regla 4.4 de Procedimiento Civil de 2009 dispone:[33]

---

[32] *Banco Popular, supra*, pág. 863; *Quiñones Reyes, supra*, pág. 374; *First Bank of P.R. v. Inmob. Nac., Inc.*, 144 D.P.R. 901 (1998).

[33] Las Reglas de Procedimiento Civil de 2009 entraron en vigor el 1 de julio de 2010, 32 L.P.R.A. Ap. V, R. 74. En el presente caso, el Tribunal de Primera Instancia emitió sentencia desestimando la demanda el 4 de noviembre de 2009 bajo las Reglas de Procedimiento Civil de 1979, mientras que el Tribunal de Apelaciones dictó sentencia revocando al tribunal de instancia luego de la vigencia de las nuevas reglas.

En nuestro ordenamiento opera la retroactividad de las normas puramente procesales sin afectar el derecho sustantivo o material de las partes. *Hernández Colón, Práctica Jurídica de Puerto Rico, supra*, pág. 24. En numerosas ocasiones hemos expresado como principio rector al aplicar las reglas de procedimiento civil, que los tribunales debemos hacer un balance equitativo entre los intereses en conflicto para garantizar la solución justa, rápida y económica de la controversia. Lluch v. España Service Station, 117 D.P.R. 729, 742(1986); Dávila v. Hospital San Miguel, 117 D.P.R. 807, 816 (1986); Isla Verde Rental v. García, 165 D.P.R. 499, 507 (2005).

El Artículo 3 del Código Civil, 31 L.P.R.A. sec. 3, establece que "las leyes no tendrán efecto retroactivo, si no dispusieren expresamente lo contrario". Ahora bien, sobre este principio hemos resuelto que si la retroactividad surge de la intención legislativa de forma expresa o tácita, debe aplicarse dicha interpretación si esta es la más razonable según el propósito legislativo, sin que esto afecte los derechos adquiridos bajo la legislación anterior. Consejo de Titulares v. Williams Hospitality, 168 D.P.R. 101, 108 (2006); J.R.T. v. A.E.E., 133 D.P.R. 1, 14 (1993). Por otro lado, recientemente expresamos que las normas de carácter procesal tienen

El emplazamiento y la demanda se diligenciarán conjuntamente… El diligenciamiento se hará de la manera siguiente:

…

(e) A una corporación, compañía, sociedad, asociación o cualquier otra persona jurídica, entregando copia del emplazamiento y de la demanda a un(a) oficial, gerente administrativo(a), agente general o a cualquier otro(a) agente autorizado(a) por nombramiento o designado(a) por ley para recibir emplazamientos. A la Sociedad Legal de Gananciales, entregando copia del emplazamiento y de la demanda a ambos cónyuges.

(f) Al Estado Libre Asociado de Puerto Rico, entregando copia del emplazamiento y de la demanda al Secretario o Secretaria de Justicia o a la persona que designe.

(g) A un(a) funcionario(a) o a una instrumentalidad del Estado Libre Asociado de Puerto Rico, que no sea una corporación pública, entregando copia del emplazamiento y de la demanda a dicho(a) funcionario(a) o al(a la) jefe(a) ejecutivo(a) de dicha instrumentalidad. Además, será requisito indispensable que en todos los pleitos que se insten contra un(a) funcionario(a) o una instrumentalidad del Estado Libre Asociado de Puerto Rico, que no sea una corporación pública, la parte demandante entregue copia del emplazamiento y de la demanda al Secretario o Secretaria de Justicia o a la persona que designe. Si la instrumentalidad es una corporación pública, entregando las copias según lo dispuesto en la Regla 4.4(e) de este apéndice.[34]

---

efecto retroactivo y que el mismo debe aplicarse con preferencia ya que supone una "mayor protección de los derechos en litigio". Clases A, B y C v. PRTC, 183 D.P.R. 666, 680 (2011).

[34] (Énfasis suplido) Regla 4.4 de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V, R. 4.4. Las Reglas de Procedimiento Civil de 2009 no alteraron, en lo pertinente, esta Regla por lo que recurrimos a la jurisprudencia interpretativa de la antigua Regla 4.4 de Procedimiento Civil de 1979. Véase 32 L.P.R.A. Ap. III, R. 4.4.

Para saber con qué inciso de la Regla 4.4 se debe cumplir, hay que determinar si la demandada es una corporación pública, una "instrumentalidad" o el propio Estado. En *Fred y Otros v. E.L.A.*, resolvimos que las corporaciones públicas se emplazan según lo dispuesto en la Regla 4.4(e), las "instrumentalidades" que no sean corporaciones públicas según la Regla 4.4(g) y cuando se trate del Estado propiamente, se recurrirá a la Regla 4.4(f).[35] En dicho caso adoptamos unos criterios para distinguir entre estos tres tipos de organismos públicos. En primer lugar, diferenciamos entre aquellas entidades gubernamentales que no tienen personalidad jurídica propia y aquellas que sí la tienen. Si la entidad no posee personalidad jurídica propia, el verdadero demandado es el Estado Libre Asociado, por lo que se debe recurrir a la Regla 4.4(f). En ese caso, no es necesario emplazar al jefe de la agencia para adquirir jurisdicción sobre el Estado.[36] En segundo lugar, atendimos la distinción entre las entidades que son, solamente, "instrumentalidades" públicas y aquellas que, además, son corporaciones públicas, reconociendo que "en nuestra legislación, el concepto de

---

[35] 150 D.P.R. 599, 606 (2000). Véase, además, Rafael Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 5ta ed., Lexis Nexis, 2010, pág. 228.

[36] Javier A. Echevarría Vargas, *Procedimiento Civil Puertorriqueño*, ed. 2012, Colombia, págs. 68-69.

'instrumentalidad' no tiene un significado concreto".[37] En atención a ello, resolvimos que una corporación pública tiene facultad para demandar y ser demandada y, a su vez, genera sus propios fondos. Por el contrario, una 'instrumentalidad' pública, aunque tiene personalidad jurídica propia y puede demandar y ser demandada, no genera sus propios fondos, pues estos provienen del ELA.[38] Cuando se trata de ese tipo de entidad gubernamental, el emplazamiento al Estado Libre Asociado es inválido si solo se notifica al jefe de la entidad gubernamental pero no se emplaza al Secretario de Justicia.[39] Por tanto, como ordena la Regla 4.4(g), cuando se demanda a "instrumentalidades"

---

[37] *Fred y Otros, supra*, pág. 606; Hernández Colón, *Práctica Jurídica de Puerto Rico, supra*, págs. 228-229.

[38] *Fred y Otros, supra*, págs. 606-607. Existen otros factores que deben analizarse para determinar si, en efecto, estamos ante una "instrumentalidad" o una agencia. Entre estos se encuentran la existencia de una junta de directores, su inclusión en las leyes de personal del gobierno central y el grado de autonomía fiscal que posee la entidad. Véase *Íd.*, págs. 605-606; *Canchani, supra*, pág. 355; *Huertas v. Cía. Fomento Recreativo*, 147 D.P.R. 12, 20-22 (1998).

   Nuestro análisis en *Canchani, supra*, es altamente ilustrativo. En esa ocasión, la Ley Orgánica de la Administración de Parques y Recreo Públicos creó dicha agencia como una agencia e "instrumentalidad". Dado que la Administración no generaba sus propios fondos, concluimos que no se trataba de una corporación pública. Por tanto, a pesar de que tenía personalidad jurídica propia, no aplicaba la Regla 4.4(e) de Procedimiento Civil. Claro está, al tener personalidad jurídica, tampoco aplicaba la Regla 4.4(f). El tener personalidad jurídica propia sin generar sus propios ingresos la situaba dentro de la Regla 4.4(g).

[39] Echevarría Vargas, *Procedimiento Civil Puertorriqueño, supra*, pág. 68.

del ELA también se tiene que emplazar al Secretario de Justicia.[40]

Como explica Cuevas Segarra, "[c]uando se demanda a un departamento ejecutivo del Gobierno, sin personalidad propia para demandar y ser demandado, la verdadera parte demandada es el ELA y no el Departamento. La inclusión del Departamento como parte querellada o demandada es improcedente por superflua y debe eliminarse".[41] Como regla general, un departamento ejecutivo no tiene personalidad jurídica distinta y separada del Estado Libre Asociado de Puerto Rico y, por tanto, no puede demandar ni ser demandado independiente del Estado.[42] Para que una entidad gubernamental tenga capacidad para demandar y ser demandada, su ley habilitadora ha de reconocerle expresamente esa facultad o, en su defecto, debe inferirse razonablemente del esquema estatutario.[43] De concluir que, en efecto, la dependencia gubernamental no posee personalidad jurídica propia, estaremos ante el Estado propiamente. Si bien existen otros factores que facilitan

---

[40] *Íd.*

[41] José Cuevas Segarra, *Tratado de Derecho Procesal Civil*, Tomo I, JTS, 2000, pág. 168.

[42] *Véase Fred y Otros, supra*, págs. 605-607, en referencia a *Rivera Maldonado v. E.L.A.*, 119 D.P.R. 74, 82 (1987). Véase, además, Cuevas Segarra, *Tratado de Derecho Procesal Civil, supra*, pág. 168.

[43] *Fred y Otros, supra*, pág. 605; *Huertas, supra*; *Canchani v. C.R.U.V.*, 105 D.P.R. 352 (1976); Cuevas Segarra, *Tratado de Derecho Procesal Civil, supra*, pág. 168.

el análisis para distinguir entre una agencia y una "instrumentalidad",[44] sin duda el más importante es la existencia de personalidad jurídica propia, es decir, su capacidad de demandar y ser demandada.[45]

La Administración de Corrección se creó por virtud de la Ley Núm. 116 de 22 de julio de 1974. Según se desprende de la Exposición de Motivos, la Administración se creó "con los poderes y con la flexibilidad necesaria para maximizar la probabilidad de rehabilitación del delincuente y para viabilizar su pronta reintegración al núcleo familiar y a la comunidad como ciudadano productivo y respetuoso de la ley".[46] Esta dependencia gubernamental sería dirigida por un administrador nombrado por el Gobernador y confirmado por el Senado.[47] Los poderes de la agencia y su administrador se encuentran en los artículos 5 y 6 del estatuto e incluyen el organizar servicios de corrección, establecer programas de tratamiento y rehabilitación, estructurar la política pública, adoptar reglamentación, preparar y administrar su presupuesto.

---

[44] Véase nota 35.

[45] *Véase* nuestro análisis de las respectivas leyes orgánicas en *Huertas, supra* (Compañía de Fomento Recreativo); *Fred y Otros, supra* (Departamento de la Vivienda); *Canchani, supra* (Administración de Parques y Recreo Públicos).

[46] Exposición de Motivos, Ley Núm. 116 de 22 de Julio de 1974, Leyes de Puerto Rico, 1974, pág. 535.

[47] Artículo 3 de la Ley Núm. 116.

En 1993, la Asamblea Legislativa aprobó el Plan de Reorganización Núm. 3, en virtud del cual se creó el Departamento de Corrección y Rehabilitación bajo el cual se agruparon, a su vez, a la Administración de Corrección, la Administración de Instituciones Juveniles, la Junta de Libertad Bajo Palabra y la Corporación de Empresas de Adiestramiento y Trabajo. Según surge del Plan, todas estas agencias "responden directamente al Gobernador o a un Secretario en forma individual; son independientes entre sí y funcionan con autonomía".[48] Entre los poderes otorgados a la nueva entidad estaban el ejercer las funciones, poderes y facultades que el Gobernador le transfiriera o delegara, dirigir, coordinar y supervisar y evaluar las operaciones de los organismos que componen el Departamento, aprobar reglamentación y asesorar al Gobernador y a la Asamblea Legislativa en la formulación de política pública. Finalmente, por vía del Plan de Reorganización Núm. 2 de 2011,[49] se derogó la Ley Núm. 116 y el Plan de Reorganización Núm. 3 de 1993, reestableciendo "el Departamento de Corrección y Rehabilitación como el organismo en la Rama Ejecutiva responsable de implantar la política pública relacionada con el sistema correccional y

---

[48] Artículo 1 del Plan de Reorganización Núm. 3 de 1993, Leyes de Puerto Rico, 1993, pág. 616.

[49] 4 L.P.R.A. Ap. XVIII.

de rehabilitación…".[50] Los poderes otorgados al Departamento reorganizado son similares a los que ya poseía bajo el Plan de Reorganización Núm. 3 y la Ley Núm. 116 que creó la Administración de Corrección.[51]

Ninguna de estas medidas legislativas otorgó expresamente a la Administración de Corrección la capacidad de demandar y ser demandada. Tampoco podemos concluir que dicha capacidad se desprenda razonablemente del esquema estatutario adoptado a través de los años. Por tanto, es forzoso concluir que la Administración de Corrección no es una instrumentalidad pública sino, por el contrario, un departamento de la Rama Ejecutiva que carece de personalidad jurídica propia. En ese sentido, cuando se insta una demanda en daños y perjuicios contra la Administración de Corrección, el verdadero demandado es el Estado Libre Asociado y al emplazarlo deben cumplirse las disposiciones de la Regla 4.4(f) de Procedimiento Civil. Es decir, únicamente hay que emplazar al Secretario de Justicia o a la persona a quien este haya delegado dicha función. En el caso de autos, solamente se emplazó a la Administración de Corrección. Nunca se emplazó personalmente al Secretario de Justicia. Por tanto, se incumplió la Regla 4.4(f) y no se asumió jurisdicción sobre

---

[50] Artículo 4 del Plan de Reorganización Núm. 2 de 2011, 4 L.P.R.A. Ap. XVIII.

[51] *Véase* artículos 5-7 del Plan de Reorganización Núm. 2.

el Estado Libre Asociado por vía de la Administración de Corrección.

No obstante, la defensa de falta de jurisdicción sobre la persona es renunciable. Se trata de una defensa que debe tramitarse según dispone la Regla 10.2 de Procedimiento Civil, por lo que hay que presentar la alegación de falta de jurisdicción "en la primera oportunidad y no deben presentarse otras mociones y otras alegaciones, ya que implicaría una renuncia a los defectos en el emplazamiento. Una moción posterior levantando esos defectos sería tardía y no prosperaría".[52] En el caso de autos, la primera vez que el ELA compareció <u>en representación de la Administración de Corrección</u>, el 26 de febrero de 2009, solicitó la desestimación de la demanda, entre otras razones, por falta de jurisdicción sobre la persona al haberse incumplido los requisitos del emplazamiento.

Ahora bien, la parte demandante alega que el ELA se sometió voluntariamente a la jurisdicción del tribunal <u>al brindar representación legal a los co-demandados Marcucci y Burgos</u> y comparecer a nombre de estos al foro judicial. Como vimos, el Tribunal de Apelaciones aceptó esta interpretación. Además, tanto la parte demandante como el foro intermedio sostienen que la decisión de brindar representación legal, producto, a su vez, de la evaluación

---

[52] Hernández Colón, *Práctica Jurídica de Puerto Rico, supra*, págs. 221-222.

que hizo el Secretario de Justicia de la petición de los co-demandados, cumple con la notificación requerida por la Ley de Reclamaciones y Demandas Contra el Estado pues en ese proceso el ELA advino en conocimiento de la existencia de un pleito en su contra. Concluyen que al cumplirse por ese medio el requisito de notificación resultó innecesario emplazar al Estado formalmente. Por el contrario, afirman que tal conocimiento, sumado a la decisión del Estado de comparecer en representación de los co-demandados, equivale a una sumisión voluntaria a la jurisdicción del Tribunal. Para analizar la validez de la contención del demandante según adoptada por el Tribunal de Apelaciones, hace falta estudiar la figura de la sumisión e indagar en el esquema establecido en la Ley Núm. 9. De igual forma, es necesario examinar el requisito de notificación al Secretario de Justicia bajo la Ley de Reclamaciones y Demandas Contra el Estado.

Como hemos visto, los tribunales no pueden actuar sobre la persona de un demandado si no adquieren autoridad, es decir, jurisdicción, sobre esa persona.[53] Típicamente, tal jurisdicción se adquiere a través del emplazamiento. Ahora bien, el emplazamiento es renunciable y hemos resuelto que "[u]na forma reconocida de efectuar tal renuncia es mediante la sumisión expresa o tácita del

---

[53] *Peña v. Warren*, 162 D.P.R. 764, 777 (2004).

demandado".[54] Específicamente, aquella parte que "comparece voluntariamente y realiza algún acto sustancial que la constituya parte en el pleito, se somete a la jurisdicción del tribunal".[55] En esos casos, la comparecencia suple la omisión del emplazamiento y es suficiente para que el tribunal asuma jurisdicción.[56] Por otro lado, un tribunal no adquiere jurisdicción sobre un demandado que no ha sido emplazado por el mero hecho que éste se encuentre presente en la corte el día del juicio.[57]

En 1975 se añadieron varios artículos a la Ley de Reclamaciones y Demandas Contra el Estado[58] "a los fines de disponer sobre la representación legal y pago de demandas contra funcionarios, exfuncionarios, alcaldes, exalcaldes, empleados y exempleados del Estado Libre Asociado en

---

[54] Íd., pág. 778.

[55] (Énfasis suplido) Íd. Entre estos actos sustanciales están presentar alegaciones sin plantear la falta de jurisdicción sobre la persona, cumplir voluntariamente con las órdenes del tribunal, entre otras. Véase Vázquez v. López, 160 D.P.R. 714, 721 (2003); Qume Caribe, Inc. v. Srio. de Hacienda, 153 D.P.R. 700, 711 (2001).

[56] Peña, supra, pág. 778.

[57] Echevarría Vargas, Procedimiento Civil Puertorriqueño, supra, pág. 64.

[58] Ley Núm. 104 de 29 de junio de 1955, 32 L.P.R.A. 3077 et seq. En particular, la Ley Núm. 9 añadió los artículos 12-19 y designó el artículo 12 original como el nuevo artículo 20.

determinados casos de violaciones de derechos civiles".[59] En particular se estableció que:

> [t]odo funcionario, exfuncionario, empleado o exempleado del Estado Libre Asociado de Puerto Rico que sea demandado en daños y perjuicios en su carácter personal, cuando la causa de acción se base en alegadas violaciones a los derechos civiles del demandante, debido a actos u omisiones incurridos de buena fe, en el curso de su trabajo y dentro del marco de sus funciones, podrá solicitar que el Estado Libre Asociado de Puerto Rico le provea representación legal y posteriormente asuma el pago de cualquier sentencia que pueda recaer sobre su persona.[60]

Según la Exposición de Motivos de la Ley Núm. 9, las demandas que pueden presentarse por violación de derechos civiles "pueden radicarse no solamente contra instrumentalidades del Gobierno sino también contra funcionarios gubernamentales en su carácter personal, aun cuando las acciones motivo de la demanda se llevan a cabo en el estricto y legal cumplimiento de las obligaciones que le imponen las leyes que tienen la obligación de administrar".[61] Por tanto, "[e]l Estado Libre Asociado de Puerto Rico reconoce que es de [*sic*] su obligación asumir cualquier responsabilidad de carácter económico con motivo de indemnizaciones impuestas por un tribunal con jurisdicción a cualquier funcionario o empleado público

---

[59] (Énfasis suplido) Leyes de Puerto Rico, 1975, pág. 1043.

[60] (Énfasis suplido) Ley Núm. 9 de 26 de noviembre de 1975, 32 L.P.R.A. sec. 3085.

[61] (Énfasis suplido) Exposición de Motivos de la Ley Núm. 9, Leyes de Puerto Rico, 1975, págs. 1043-44.

cuando esto ocurra como consecuencia de una acción administrativa tomada de buena fe, dentro de las disposiciones legales vigentes y dentro del marco de sus funciones".[62] También indica la Exposición de Motivos que "[e]l Estado Libre Asociado reconoce que es necesario proveerle a sus funcionarios y empleados la seguridad de que si actúan de acuerdo a las normas vigentes y de buena fe, sus actuaciones han de ser respaldadas legal y económicamente por el Estado. De no adoptar esta directriz, graves serían las consecuencias para el reclutamiento y retención de personal de excelencia en el servicio público".[63]

Hemos expresado que, por medio de este estatuto, "el Estado reconoció que existen instancias en las que funcionarios gubernamentales pueden ser demandados en su carácter personal".[64] Por eso, para recibir los beneficios de representación legal o pago de la sentencia, hace falta

---

[62] *Íd.*, pág. 1044.

[63] (Énfasis suplido) *Íd.* "Es obvio, que se hace necesario reclutar, retener y proteger servidores capacitados e idóneos que puedan actuar con libertad y tomar decisiones sin sentir presiones ni amenazas en contra de su patrimonio particular, lo cual sin lugar a dudas, causa una situación de gran desasosiego para él y su familia". *Íd.* Ahora bien, la Ley Núm. 9 establece que "lo aquí provisto no debe entenderse bajo ningún concepto como que convierte al Estado en asegurador de los servidores públicos antes señalados, ni que constituye una renuncia a la inmunidad soberana del Estado Libre Asociado". 32 L.P.R.A. 3085.

[64] (Énfasis suplido) *Torres Santiago v. Depto. Justicia*, 181 D.P.R. 969, 986-987 (2011).

que el funcionario o empleado sea demandado en su carácter personal y la causa de acción esté fundamentada en alegadas violaciones a los derechos civiles del demandante por actos u omisiones del funcionario que se hayan incurrido de buena fe en el curso de su trabajo y dentro del marco de sus funciones.[65] Además, para poder solicitar y obtener los beneficios de la Ley Núm. 9, el funcionario o empleado <u>no debe tener disponibles los beneficios de la Ley de Reclamaciones y Demandas Contra el Estado</u>.[66] En este sentido, el propósito de la Ley Núm. 9 es complementar la Ley de Reclamaciones y Demandas Contra el Estado y "proteger a los funcionarios y empleados públicos no cubiertos por [dicha] Ley".[67] Cabe destacar que el que el Estado otorgue el beneficio de representación legal no conlleva, automáticamente, que habrá de pagar cualquier sentencia que en su día pueda recaer. Por eso, hemos reconocido que "el beneficio principal que provee la Ley Núm. 9, *supra*, es la representación legal".[68]

---

[65] *Íd.*, pág. 988. De igual forma, el estatuto excluye de sus beneficios aquellos actos u omisiones que sean constitutivos de delito, ocurran fuera del marco de sus funciones oficiales, medie negligencia inexcusable y cuando se haya establecido jurisprudencialmente un estado de derecho diferente mediante sentencia final y firme. *Íd.*

[66] *Ortiz et al. v. E.L.A., supra*, págs. 70-71.

[67] *García v. E.L.A.* 146 D.P.R. 725, 737 (1998).

[68] *Ortiz et al. v. E.L.A. et al.*, 158 D.P.R. 62, 71-72 (2002).

Una de las razones por las cuales la Asamblea Legislativa adoptó estos beneficios para sus funcionarios y empleados es el que el Estado Libre Asociado, distinto a sus funcionarios, no puede ser demandado directamente en el foro federal.[69] Ante el foro federal, el demandante presenta su causa de acción únicamente contra el funcionario en su carácter personal y no contra el Estado propiamente.

Nuestro análisis de la Ley Núm. 9 confirma que la acción contra el Estado directamente y la acción contra sus funcionarios en su carácter personal son dos causas de acción separadas.[70] En la primera, el Estado figura como la parte demandada. En la segunda, el demandado es el funcionario en su carácter personal. A este se le concede el derecho a solicitar, como beneficio del empleo, que el Estado le brinde representación legal y, si no resulta

---

[69] *Torres Santiago, supra*, pág. 987; *Ortiz et al., supra*, pág. 75.

[70] "No siendo el Estado una persona natural, sólo puede actuar a través de sus funcionarios y empleados y, por ende, su responsabilidad es vicaria". *García, supra*, pág. 734. Claro está, eso se refiere a la propia responsabilidad del ELA bajo la Ley de Reclamaciones y Demandas Contra el Estado, no a la responsabilidad personal de los funcionarios y empleados que son demandados por violaciones a derechos civiles. Ahora bien, nuestro ordenamiento no mantiene una distinción tajante entre ambas causas de acción, pues la propia Ley de Reclamaciones y Demandas Contra el Estado dispone que "[l]a sentencia que se dicte en cualquier acción autorizada por las secs. 3077 a 3092a de este título impedirá toda otra acción por parte del reclamante, por razón de la misma cuestión o materia, contra el funcionario, agente o empleado cuyo acto u omisión dio origen a la acción; y la sentencia contra el funcionario, agente o empleado impedirá igualmente toda acción contra el Estado." 32 L.P.R.A. 3083.

victorioso, pague la sentencia que recaiga en su contra. Como explicamos en *García v. ELA*, "no existe ningún impedimento para que la demanda se inste directamente contra el funcionario o empleado o, de forma alternativa, en contra del ELA y del funcionario o empleado, aunque no puede haber acumulación de indemnizaciones".[71] Por su parte, este beneficio de empleo no es un pago por servicios rendidos, sino "un gasto necesario para poder reclutar, retener y mantener una administración pública eficiente que sirva adecuadamente a los intereses del pueblo de Puerto Rico".[72]

Para recibir los beneficios de la Ley Núm. 9, el funcionario o empleado debe seguir ciertos trámites que establecen el propio estatuto y el Reglamento sobre Representación Legal y Pago de Sentencia bajo la Ley de Reclamaciones y Demandas Contra el Estado.[73] Los beneficios no son automáticos, pues se requiere una solicitud fundamentada y una evaluación por parte del Secretario de Justicia.[74] Por eso, el primer trámite a cumplir es,

---

[71] *García, supra*, pág. 735.

[72] (Énfasis suplido) *Íd.*, págs. 737-738, citando al Informe Conjunto de las Comisiones de Gobierno y de lo Jurídico Civil sobre el P. del S. 1580 de 6 de noviembre de 1975, 7ma Asamblea Legislativa, 9na Sesión Extraordinaria, pág. 11.

[73] Reglamento Núm. 4071 de 8 de septiembre de 1989.

[74] Se trata de una discreción limitada del Secretario de Justicia. *Ortiz et al., supra*, pág. 72.

precisamente, solicitar los beneficios al Secretario de Justicia, por escrito y antes de formular cualquier alegación responsiva, <u>exponiendo los hechos ocurridos que dan paso a la demanda en su contra</u>.[75]

En cuanto a la evaluación de la solicitud, le corresponde al Secretario de Justicia cerciorarse que la misma contiene toda la información que requiere el Reglamento "para así determinar si el solicitante es elegible" para los beneficios de la Ley Núm. 9.[76] Acto seguido, el Secretario evaluará la solicitud en sus méritos y determinará si, en efecto, otorgará los beneficios estatutarios.[77] En caso de que deniegue la solicitud, el Secretario deberá notificarlo e incluirá unas determinaciones de hechos y conclusiones de derecho; también advertirá al solicitante de su derecho a pedir reconsideración y recurrir en revisión judicial.[78] En todo

---

[75] 32 L.P.R.A. sec. 3086. Los demás trámites y requisitos están contenidos en los artículos 5 y 6(B) del Reglamento Núm. 4071 e incluyen: una relación sucinta y concisa de la versión del solicitante sobre los hechos alegados en la demanda; firma y dirección del funcionario; nombre y dirección del organismo o dependencia gubernamental para la cual prestaba servicios y el puesto que allí ocupaba; <u>dos copias de la demanda y el emplazamiento</u>; y cualesquiera informes o documentos que el solicitante considere que apoyan su posición.

[76] Artículo 7(A) y (B) del Reglamento Núm. 4071.

[77] 32 L.P.R.A. sec. 3087.

[78] Artículo 8(G) del Reglamento Núm. 4071.

caso, el Secretario tiene treinta días para notificar su decisión.[79]

Lo anterior indica claramente que cuando se demanda a un funcionario en su capacidad personal, el Estado <u>no es parte del pleito</u>, aunque le haya otorgado representación legal. El que el Estado asuma su representación es parte de un beneficio que reconoce la ley a los funcionarios como parte de una política pública para proteger a los empleados públicos que quedarían expuestos a ser demandados en su carácter personal por las acciones tomadas en el marco de sus funciones oficiales. Por tanto, la comparecencia del Estado Libre Asociado <u>como representante legal de los funcionarios co-demandados</u> no constituye un acto sustancial que lo convierta en parte del pleito y no se puede concluir que al hacerlo el Estado se ha sometido voluntariamente a la jurisdicción del tribunal <u>como parte independiente y separada de la persona del funcionario demandado</u>.

Pero hay más. En el caso de autos, el Tribunal de Apelaciones determinó que en el proceso de solicitud, evaluación y concesión del beneficio de la representación

---

[79] 32 L.P.R.A. sec. 3087. Cabe señalar que el propio estatuto provee que "[a]l fin de proteger los derechos del demandado de comparecer en tiempo al tribunal, el Secretario de Justicia <u>podrá solicitar tiempo adicional para hacer una determinación respecto a la solicitud que se le hiciera</u>". (Énfasis suplido). Evidentemente, fue un error del Tribunal de Primera Instancia resolver que, hasta tanto el ELA asumiese la representación legal de los co-demandados, no tenía derecho a solicitar prórroga en lo que decidía si, en efecto, asumiría tal representación.

legal al amparo de la Ley Núm. 9 se cumple el requisito de notificación al Secretario de Justicia sobre la existencia de un pleito en contra del Estado Libre Asociado y que ello suple la omisión de emplazamiento bajo la Regla 4.4(f). Para llegar a esta conclusión equivocada el foro apelativo recurrió a la Ley de Reclamaciones y Demandas Contra el Estado.[80]

Por vía de esta ley, la Asamblea Legislativa autorizó "demandar al Estado Libre Asociado de Puerto Rico en acciones por daños y perjuicios a la persona o a la propiedad causadas por acción u omisión de cualquier funcionario, agente, o empleado del Estado, o cualquier otra persona en capacidad oficial y dentro del marco de su función, cargo o empleo interviniendo culpa o negligencia".[81] Este estatuto constituye una renuncia amplia pero condicionada por parte del Estado a la protección que le brinda la inmunidad del soberano.[82] Entre esas condiciones está el que la persona que tenga alguna reclamación contra el Estado tenga que notificar por escrito al Secretario de Justicia "haciendo constar, en forma clara y concisa, de la fecha, sitio, causa y naturaleza general del daño sufrido, los nombres y

---

[80] Ley Núm. 104 de 29 de junio de 1955, según enmendada; 32 L.P.R.A. sec. 3077 *et seq.*

[81] (Énfasis suplido) *Galarza Soto v. E.L.A.,* 109 D.P.R. 179, 181 (1979).

[82] *García v. E.L.A., supra*, pág. 734.

direcciones de sus testigos, y la dirección del reclamante, así como el sitio donde recibió tratamiento médico en primera instancia".[83] La ley requiere que esta notificación se entregue al Secretario de Justicia por correo certificado, mediante diligenciamiento personal, o en cualquier otra forma fehaciente reconocida en derecho en un término no mayor de noventa días siguientes a la fecha en que el reclamante tuvo conocimiento de los daños que reclama.[84]

La notificación al Secretario de Justicia que ordena la Ley de Reclamaciones y Demandas Contra el Estado no es un requisito de naturaleza jurisdiccional sino de cumplimiento estricto y ha estado sujeta a una trayectoria liberalizadora.[85] Hemos resuelto que dicha notificación puede hacerse tardíamente si existe justa causa.[86]

Según el demandante y el Tribunal de Apelaciones, el objetivo de notificar al Secretario de Justicia se cumplió, pues éste recibió la petición de representación legal de los co-demandados Marcucci y Burgos, evaluó la misma y,

---

[83] 32 L.P.R.A. sec. 3077a(a).

[84] 32 L.P.R.A. secs. 3077a(b) y (c). *Berríos Román v. E.L.A.*, 171 D.P.R. 549, 557 (2007).

[85] *Berríos Román, supra.*

[86] *Íd.*, pág. 558. Véase, además, *Rosario Mercado v. ELA*, 2013 T.S.P.R. 104, 188 D.P.R. ___ (2013) y las Opiniones de Conformidad de la Jueza Asociada Pabón Charneco y el Juez Asociado Estrella Martínez en nuestra Sentencia en *E.L.A. v. Martínez Zayas*, 2013 T.S.P.R. 68, 188 D.P.R.___ (2013).

posteriormente, otorgó los beneficios solicitados. Para ser considerada, dicha petición tenía que incluir una relación detallada de los hechos en controversia, incluyendo un listado de los potenciales testigos. Por tanto, el foro apelativo concluyó que el proceso al amparo de la Ley de Reclamaciones y Demandas Contra el Estado subsanó la omisión de emplazar al Secretario de Justicia como representante del ELA según requiere la Regla 4.4(f) de Procedimiento Civil.

Este análisis contiene una falacia estructural insubsanable pues parte de una relación de identidad entre la notificación y el emplazamiento. Se trata de dos actos jurídicos de distinta naturaleza y propósitos y efectos distintos. Por eso, aunque el ELA hubiese sido debidamente notificado bajo la Ley de Reclamaciones y Demandas Contra el Estado, ello no equivaldría al emplazamiento requerido por la Regla 4.4(f) de Procedimiento Civil. No se cumple con la Regla 4.4(f) meramente _notificando_ al Secretario de Justicia de la existencia de un pleito contra el Estado. Hace falta _emplazarlo_. Recordemos que el emplazamiento no tiene como único fin poner en aviso a una parte de la existencia de un pleito en su contra. Se trata de un mecanismo formal que dota al tribunal de la autoridad sobre la persona del demandado. Por vía del emplazamiento se advierte a la parte demandada que el tribunal ya tiene

jurisdicción sobre su persona y que puede proceder en su contra según sea necesario.

En este caso no se emplazó al Secretario de Justicia según ordena la Regla 4.4(f) de Procedimiento Civil, el ELA no realizó acto sustancial alguno como parte en el litigio que permitiera concluir que se sometió voluntariamente a la jurisdicción del tribunal y la información que poseía el Secretario de Justicia no subsanó la falta de emplazamiento formal que requiere nuestro ordenamiento procesal. Por ende, tenemos que resolver que no se obtuvo jurisdicción sobre la persona del Estado Libre Asociado de Puerto Rico.

### III

El señor Cirino González demandó y emplazó al Teniente Marcucci y al Sargento Burgos en su carácter oficial y personal. El Tribunal de Primera Instancia resolvió que el ELA era parte indispensable en este pleito y que, al no haberse emplazado al Estado adecuadamente, tenía que desestimar las demás causas de acción contra estos co-demandados. Por su parte, el Tribunal de Apelaciones concluyó que había jurisdicción sobre el ELA y, por ello, era improcedente la desestimación de la causa de acción contra los co-demandados. Hemos visto que el foro apelativo erró al concluir que, en efecto, había jurisdicción sobre el Estado. Nos resta resolver si el foro de instancia tenía

razón para concluir que el ELA es parte indispensable en esta controversia.

La Regla 16.1 de Procedimiento Civil de 2009 dispone, en lo pertinente, que "[l]as personas que tuvieren un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandados según corresponda".[87] Una parte indispensable se define como "aquella que tiene tal interés en la cuestión envuelta en la controversia que no puede dictarse un decreto final entre las partes en la acción sin lesionar y afectar radicalmente su interés, o sin permitir que la controversia quede en tal estado que su determinación final haya de ser inconsistente con la equidad y una conciencia limpia".[88] Se trata, como señalamos hace muchos años, de un ejercicio de consideración pragmática de los intereses envueltos.[89] El objetivo es, simplemente, evitar la multiplicidad de pleitos y los efectos perjudiciales que una sentencia adversa pudiera tener sobre la parte excluida en el caso.[90] Por eso, al

---

[87] 32 L.P.R.A. Ap. V, R. 16.1. Esta disposición no sufrió cambios al aprobarse las Reglas de Procedimiento Civil de 2009.

[88] Cuevas Segarra, *Tratado de Derecho Procesal Civil, supra*, pág. 375, en referencia a *Fuentes v. Tribunal de Distrito*, 73 D.P.R. 959, 981 (1951).

[89] *Hernández Agosto v. López Nieves*, 114 D.P.R. 601, 606 (1983).

[90] De igual forma, esta figura está basada en dos axiomas: la protección constitucional que impide que persona alguna

referirse al "interés común" que da lugar a la acumulación, hemos resuelto no se trata de cualquier interés en el pleito. Tiene que ser "de tal orden que impida la confección de un decreto sin afectarlo".[91]

Acorde a lo anterior, hemos optado por emplear un "enfoque práctico" en estos casos.[92] Así, la ausencia de incluir una parte indispensable es motivo para desestimar pero, a solicitud de parte interesada, el tribunal puede conceder la oportunidad de traer al pleito a la parte originalmente omitida, siempre y cuando pueda el tribunal asumir jurisdicción sobre ella.[93] En ese sentido, "[m]ientras esté presente la posibilidad de traer a esa parte al pleito, no procederá la desestimación sino que se concederá la oportunidad de incluir a dicha parte en el proceso".[94]

En la demanda contra los señores Marcucci y Burgos en su carácter oficial, es indiscutible que el ELA es parte

---

sea privada de la libertad y propiedad sin un debido proceso de ley y la necesidad de incluir a una parte indispensable para que el decreto judicial emitido sea completo. *Cepeda Torres v. García Ortiz*, 132 D.P.R. 698, 704 (1993).

[91] *Hernández Agosto, supra*, pág. 607; Cuevas Segarra, *Tratado de Derecho Procesal Civil, supra*, pág. 375. Véase *Cepeda Torres, supra*, pág. 705.

[92] *Unisys v. Ramallo Brothers*, 128 D.P.R. 842, 859 (1991).

[93] Echevarría Vargas, *Procedimiento Civil Puertorriqueño, supra*, pág. 140.

[94] *Íd.*

indispensable. Cuando se demanda por daños y perjuicios a un funcionario en su carácter <u>oficial</u>, la verdadera parte con interés es el Estado, quién responderá bajo la Ley de Reclamaciones y Demandas Contra el Estado, si se cumplen los requisitos de ese estatuto. Si permitiéramos la demanda contra Marcucci y Burgos en su carácter oficial sin la presencia del ELA, estaríamos exponiendo al Estado a una sentencia adversa que podría incluir daños pecuniarios que el Estado tendría que pagar. Por tanto, no puede continuar dicha causa de acción sin la presencia de esta parte. Claro está, como mencionamos, nuestro ordenamiento procesal civil permite que se acumule a la parte indispensable omitida, de forma que no sea necesario desestimar la totalidad del pleito.

La situación es totalmente distinta en lo que se refiere a la demanda contra estos funcionarios <u>en su carácter personal</u>. Cuando se demanda a un funcionario en su carácter <u>personal</u> resulta evidente que el ELA <u>no</u> es una parte indispensable pues no hay impedimento alguno para que se demande directamente al funcionario o empleado en su carácter personal omitiendo al Estado. Como adelantamos, en *García v. ELA* resolvimos que cuando se demanda al funcionario en su capacidad personal la demanda puede instarse <u>directamente</u> contra este o contra el ELA y el funcionario, aunque no se podrán acumular las

indemnizaciones.[95] Precisamente, explicamos que para obtener los beneficios de la Ley Núm. 9, debe demandarse al funcionario en su carácter personal por violaciones a los derechos civiles del demandante <u>y no pueden estar disponibles los beneficios de la Ley de Reclamaciones y Demandas Contra el Estado</u>. Por tanto, en esas circunstancias la causa contra el funcionario y la causa de acción contra el Estado son dos causas de acción separadas, de manera que si se demanda al funcionario en su capacidad personal, no hay obligación alguna de demandar al Estado. Lo que es más, si recae sentencia monetaria contra los co-demandados en su carácter personal, el ELA no responde automáticamente, sino que debe presentarse una petición a esos efectos. Presentada la petición, el Secretario de Justicia determinará si el ELA opta por pagar la misma. El ELA no es parte indispensable en estos casos. Por tanto, no puede desestimarse la causa de acción contra Marcucci y Burgos en su carácter personal por falta de parte indispensable, dado que estos fueron demandados y emplazados adecuadamente.


IV


Por último, nos corresponde atender la desestimación de la demanda con perjuicio contra los oficiales Medina

---

[95] *García v. ELA, supra*, pág. 735.

Cotto y Acevedo Cotto, ordenada por el foro de instancia porque no fueron emplazados dentro del término dispuesto por la Regla 4.3(b) de Procedimiento Civil.

La nueva Regla 4.3(c) de Procedimiento Civil de 2009 dispone:

> El emplazamiento será diligenciado en el término de ciento veinte (120) días a partir de la presentación de la demanda o de la fecha de expedición del emplazamiento por edicto. El Secretario o Secretaria deberá expedir los emplazamientos el mismo día en que se presenta la demanda. Si el Secretario o Secretaria no los expide el mismo día, el tiempo que demore será el mismo tiempo adicional que los tribunales otorgarán para diligenciar los emplazamientos una vez la parte demandante haya presentado de forma oportuna una solicitud de prórroga. Transcurrido dicho término sin que se haya diligenciado el emplazamiento, el tribunal deberá dictar sentencia decretando la desestimación y archivo <u>sin perjuicio</u>. Una subsiguiente desestimación y archivo por incumplimiento con el término aquí dispuesto tendrá el efecto de una adjudicación en los méritos.[96]

Si bien la aplicación de esta regla nos obligaría a ordenar la desestimación sin perjuicio de la causa de acción contra Acevedo Cotto y Medina Cotto, entendemos que la alegación del señor Cirino González sobre la falta de notificación del diligenciamiento negativo de los emplazamientos amerita nuestra consideración.

---

[96] (Énfasis suplido) 32 L.P.R.A. Ap. V, R. 4.3(c).

En *Sánchez Rodríguez v. Adm. de Corrección*,[97] nos topamos con una controversia similar a la de autos. En aquel entonces, un confinado demandó a la Administración de Corrección, por derecho propio e *in forma pauperis*, solicitando daños y perjuicios por un alegado registro ilegal. Acto seguido, el tribunal de instancia ordenó al alguacil a diligenciar los emplazamientos. Tras percatarse de un problema con los emplazamientos, el foro primario le ordenó a la Oficina del Alguacil regional que investigara y evidenciara que estos fueron diligenciados. **No se notificó al demandante sobre el cumplimiento de esa orden**.

Al relacionar la Regla 4.3(b) con la Regla 39.2(b) de Procedimiento Civil que regula las desestimaciones por inactividad o dejadez, expresamos que ambas reglas "son mecanismos que tiene a su discreción el tribunal para darle fin a un caso que ha sido desatendido por un litigante".[98] Tomando nota de que, en aquel entonces, en ambas circunstancias se podía ordenar la desestimación de la demanda con perjuicio, enfatizamos la necesidad de atemperar dichas reglas a la política pública que favorece que los casos se ventilen en sus méritos. De igual forma, resaltamos el interés y diligencia mostrados por el demandante en ese caso. Concluimos que difícilmente podía atribuirse inactividad al demandante "cuando éste se

---

[97] 177 D.P.R. 714 (2009).

[98] *Íd.*, págs. 720-721.

encuentra confinado y el control del proceso está en manos del tribunal".[99] También concluimos que, según la orden del Tribunal de Primera Instancia, el diligenciamiento correspondía al Alguacil Regional de Ponce, la orden estuvo casi dos años sin cumplirse y el demandante "**nunca conoció el resultado de los trámites que hizo el Alguacil Regional de Ponce**".[100] Por tanto, resolvimos que no procedía la desestimación como sanción.

En el caso de autos, surge del expediente y las decisiones de los foros inferiores que el diligenciamiento de los emplazamientos correspondientes a la demanda original y la primera demanda enmendada estaban a cargo del propio Estado. Fue de esa forma que el señor Cirino González logró emplazar a la Administración de Corrección y a los co-demandados Marcucci y Burgos, quienes aún fungían como empleados de dicha agencia. No se emplazó a los co-demandados Acevedo Cotto y Medina Cotto porque ya no eran empleados públicos. Según alega el señor Cirino González, a él nunca se le notificó que no se había emplazado a estos co-demandados y no fue hasta que se dictó Sentencia desestimando con perjuicio la causa de acción contra los señores Acevedo Cotto y Medina Cotto que se enteró de ese hecho. Evidentemente, si nunca se le notificó del emplazamiento negativo, era razonable que el demandante

---

[99] (Énfasis suplido) *Íd.*

[100] (Énfasis suplido) *Íd.*, pág. 725.

confiara en que estos co-demandados fueron, en efecto, emplazados según ordenó el tribunal. Sin embargo, la alegación del señor Cirino González no ha sido objeto de prueba. Corresponde al Tribunal de Primera Instancia recibir la prueba que tenga a bien presentar el demandante y hacer las determinaciones de hechos correspondientes.[101]

V.

En vista de lo anterior, revocamos parcialmente la Sentencia del Tribunal de Apelaciones y resolvemos que no hay jurisdicción sobre la persona del Estado Libre Asociado, por lo cual procede la desestimación <u>sin perjuicio</u> de la demanda en su contra. De igual forma, procede la desestimación <u>sin perjuicio</u> de la causa de acción contra los co-demandados Marcucci, Burgos, Acevedo Cotto y Medina Cotto en su carácter oficial, por falta de parte indispensable.

Por otro lado, confirmamos la decisión del foro intermedio que rechazó desestimar la causa de acción contra los co-demandados Marcucci y Burgos en su carácter

---

[101] En su Sentencia desestimatoria, el foro primario se limitó a desestimar con perjuicio la demanda contra estos co-demandados por falta de emplazamiento y en ningún momento hizo determinaciones de hecho particulares sobre las razones para dicha omisión. Sin duda, si se concluyera que el diligenciamiento de los emplazamientos estuvo a cargo del Estado y que éste no notificó adecuadamente al demandante sobre el diligenciamiento negativo, no procedería desestimar su causa de acción bajo la Regla 4.3(b). *Sánchez Rodríguez, supra.*

personal. Finalmente, referimos al Tribunal de Primera Instancia el asunto de la desestimación de la causa contra los co-demandados Acevedo Cotto y Medina Cotto en su carácter personal, para que éste dilucide si, en efecto, el demandante fue notificado del diligenciamiento negativo de sus emplazamientos. Se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de forma compatible con esta Opinión.

Se dictará Sentencia de conformidad.


                                        Liana Fiol Matta
                                        Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Juan O. Cirino González
                Recurrido


                        v.

                                                    *Certiorari*
                                    CC-2010-898

Administración de Corrección,
*et al.*
                Peticionarios



                        *SENTENCIA*

En San Juan, Puerto Rico a 9 de enero de 2014.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, revocamos parcialmente la Sentencia del Tribunal de Apelaciones y resolvemos que no hay jurisdicción sobre la persona del Estado Libre Asociado, por lo cual procede la desestimación sin perjuicio de la demanda en su contra. De igual forma, procede la desestimación sin perjuicio de la causa de acción contra los co-demandados Marcucci, Burgos, Acevedo Cotto y Medina Cotto en su carácter oficial, por falta de parte indispensable.

Por otro lado, confirmamos la decisión del foro intermedio que rechazó desestimar la causa de acción contra los co-demandados Marcucci y Burgos en su carácter personal.

Se refiere al Tribunal de Primera Instancia el asunto de la desestimación de la causa contra los co-demandados Acevedo Cotto y Medina Cotto en su carácter personal, para que éste dilucide si, en efecto, el demandante fue notificado del diligenciamiento negativo de sus emplazamientos. Se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de forma compatible con esta Opinión.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal.

                    Aida Ileana Oquendo Graulau
                    Secretaria del Tribunal Supremo